## MAY and others *v.* SIMMONS, Collector.

*(Circuit Court, D. Massachusetts.* ———, 1880.)

1. REVENUE—LAW—CONSTRUCTION.—The denomination of articles enumerated in a revenue law is construed according to the commercial understanding of the terms used, and not with reference to the materials of which such articles may be made, or the use to which they may be applied.

     *Curtis* v. *Martin,* 3 How. 109.
     *Elliot* v. *Swartwout,* 10 Pet. 137.

2. SAME—"TIN PLATES"—REV. ST. § 2503.—"Tin plates" are not included in section 2503 of the Revised Statutes, under the terms "metals not herein otherwise provided for," or "manufactures of metals."

     *Dodge* v. *Arthur,* 22 Int. Rev. Rec. 402, criticised.

3. SAME—SAME—REV. ST. § 2504, SCHED. E.—"Tin in plates or sheets" is subject to a duty of 15 per cent. *ad valorem,* in accordance with the provisions of section 2504 of the Revised Statutes, schedule E.

CLARK, D. J. The plaintiffs, in 1874, imported into the port of Boston 5,581 boxes of tin plates. The defendant, then collector of the port, assessed and collected a duty of 15 per cent. *ad valorem* on these plates. The plaintiffs paid the duty under protest, contending that the duty should have been only 90 per cent. of 15 per cent. *ad valorem;* and the question to be considered here is whether the duty of 15 per cent. *ad valorem* was correctly laid, or whether it should have been, as plaintiffs contend, 90 per cent. of the 15 per cent. *ad valorem.*

By section 2504 of the Revised Statutes, schedule E, p. 470, "tin, in plates or sheets," is subjected to a duty of 15 per cent. *ad valorem,* and under this provision of the law the collector assessed the duty. But section 2503 of the Revised Statutes provides: "There shall be levied, collected, and paid

upon all articles mentioned in the schedules contained in the next section,"—that is, section 2504, just cited,—"imported from foreign countries, the rates of duty which are by the schedules, respectively, prescribed: *provided*, that on the goods, wares, and merchandise in *this section* enumerated and provided for, imported from foreign countries, there shall be levied, collected, and paid only *90* per centum of the several duties and rates of duty imposed by the said schedules upon said articles severally—that is to say, on all manufactures of cotton, of which cotton is the component part of chief value; on all wools, hair of the alpaca, goat, and other animals, and all manufactures wholly or in part of wool, or hair of the alpaca, and other like animals, except umbrellas, parasols, and sun shades covered with silk or alpaca; on all iron and steel, and on all manufactures of iron and steel, of which such metals, or either of them, shall be the component part of chief value, excepting cotton machinery; on all metals not herein otherwise provided for, and all manufactures of metals, of which either of them is the component part of chief value, excepting percussion-caps, watches, jewelry, and other articles of ornament: *provided*, that all wire rope and wire strand, or chain made of iron wire, either bright, coppered, galvanized, or coated with other metals, shall pay the same rate of duty that is now levied on the iron wire of which said rope, or strand, or chain is made; and all wire rope, and wire strand, or chain made of steel wire, either bright, coppered, galvanized, or coated with other metals, shall pay the same rate of duty that is now levied on steel wire, of which said rope, or strand, or chain is made; on all paper and manufactures of paper, excepting unsized printing paper, books, and other printed matter, and excepting sized or glued paper suitable only for printing paper; on all manufactures of India rubber, gutta percha, or straw, and on oil-cloths of all descriptions; on glass and glassware, and on unwrought pipe clay, fine clay, and fuller's-earth; on all leather not herein otherwise provided for, and on all manufactures of skins, bone, ivory, horn, and leather, except gloves and mittens, and of which either of said articles is the component part of chief value, and on liquorice-

paste or liquorice-juice." And the plaintiffs contend that, under the provisions of this section, "tin plates" should have been assessed 90 per cent. of 15 per cent. *ad valorem*, instead of the entire 15 per cent.

If the plaintiffs are right in this position, it must be because "tin plates" are included in some of the general classifications of the section, as they are not mentioned, *eo nomine*, therein. The only classifications in which they can be included are metals or manufactures of metals. But they cannot be included among metals, because the metals mentioned are metals *not herein otherwise provided for,* and "tin plates" are otherwise provided for in the following section, schedule E, p. 467, of the Revised Statutes.

It is objected that the words "herein otherwise provided for" apply only to section 2503, and do not extend to other sections in the title; but this limitation or construction cannot be admitted, because—*First,* congress, in limiting or defining the goods, wares, and merchandise to which the provisions in section 2503 should apply, uses the more precise and restrictive words *"in this section enumerated;"* and, when it afterwards uses the words "not herein provided for," must have intended something different and more extended, especially as both expressions occur in the same section. They can hardly be held to be synonymous. *Second,* because the words "herein provided for," "or not herein provided for," as used in the United States Statutes, generally, if not always, refer to the act, chapter, or title, and not to the section. Before the revision they referred to the act or chapter, and since, more generally, to the title. *Third,* because, in section 2 of the act of June 2, 1872,—from which the provisions of section 2503 of the Revised Statutes are copied almost *verbatim,* and where this precise expression is used, and in the same manner, application, and connection,—it evidently does not apply to the *section 2* in which it is used, but extends to other provisions of the act. *Fourth,* because, to give the words the limitation or application contended for by the plaintiffs, they are rendered useless and meaningless in the section. There are no metals otherwise provided for in the

section, and it would have been just as well to have omitted them and to have said *metals,* simply, as to have said metals *"not herein otherwise provided for."*

It is objected by the plaintiffs that, if the words are construed to extend beyond the section, there is nothing for them to operate upon; and that so, they would defeat the object of this proviso; but that can hardly be so.

If examination be made of the concluding paragraph of schedule E, Rev. St. 467, it will be found that metals, unmanufactured, *not otherwise provided for,* pay 20 per cent. *ad valorem,* and by this provision of section 2503 they pay *90 per cent. of 25 per cent. ad valorem.*

If "tin plates" cannot be included among metals "not herein otherwise provided for," are they included in manufactures of metals? The phrase is, *"all manufactures of metals,"* and is broad enough and inclusive enough to include tin plates, which are made or manufactured from iron and tin; yet still the question remains, are they so included? Was such the intention of congress, and is such the proper construction of the statute? We think not, and—*First,* because they are otherwise specifically provided for, both in section 2504 of the Revised Statutes, and in section 4 of the act of June 6, 1872, from which the provisions of the Revised Statutes in question are copied or taken. *Second,* because, in section 2 of the act of 1872, these precise words, *"all manufactures of metals,"* are used just as broad and just as inclusive as in section 2503 of the Revised Statutes, and yet they do not include "tin plates" therein, because tin plates are afterwards expressly provided for in section 4 of the act, (17 Gen. St. 233,) and subjected to a duty of 15 per cent. *ad valorem.* It is difficult to see by what fair construction the words "all manufactures of metals" should be made to include more in section 2503 of the Revised Statutes than they do in section 2 of the act of June 6, 1872, (17 Gen. St., 231,) *from which they are copied verbatim,* with the same context, and made applicable to the same matter; especially as in each case "tin plates" are especially provided for. *Third,* because congress, in the tariff acts, has not

included tin plates among manufactures of metals, but has designated them as tin plates specifically, or included them in some other provision.

In the case agreed, it is stated that "the merchandise in question was properly classified as 'tin in plates,' and is known in commerce only as 'tin in plates, or tin plates,' and does not come under the provisions in schedule E, viz, 'iron and tin plates, galvanized or coated with any metal otherwise than by electric batteries, two and a half cents per pound.'" Now, if "tin plates" are known in commerce only by that name, it would naturally be expected that congress, in framing tariff acts, would also designate them by that name, because the name is specific and definite, and well known among merchants; and tariff laws generally follow the language of commerce. And so we find congress has done. Thus, in the act of July 4, 1779, at the first session of congress (1 Gen. St. 26) "tin plates," specifically named as such, were made free, while tinware was taxed $7\frac{1}{2}$ per cent. *ad valorem.* So, in the act of August 10, 1790, (1 St. 181,) "tin plates" are made free—specifically excepted from duty—while rolled iron and *all wares of tin* are subjected to a duty of $7\frac{1}{2}$ per cent. *ad valorem.* Again, by the act of May 2, 1792, (1 St. 259,) "*all manufactures of iron, steel, tin, pewter, copper, etc., of which either of these metals is the article of chief value, not otherwise particularly enumerated,*" are made to pay 10 per cent. *ad valorem,* but "tin plates" are continued on the free list by section 2 of the same act. This act of congress is particularly observable in this: here is the expression, "*all manufactures of iron, steel, tin, pewter, and brass,*" just as strong, just as clear, just as free from ambiguity as the expression "*all manufactures of metals,*" in section 2503 of the Revised Statutes, and yet it clearly does not include "tin plates."

The act of 1816, April 27th, (3 Gen. St. U. S. 310,) which repealed all former laws imposing duties, imposed a duty of 20 per cent. *ad valorem* upon "all articles manufactured from brass, copper, iron, steel, pewter, lead, or tin, or of which these metals, or either of them, is the material of chief value, —re-enacting this provision of the act of 1792 in very nearly

its precise words,—and upon all articles not free and not subject to any other rate of duty, a duty of 15 per cent. *ad valorem.* It omitted "tin plates" from the free list where they had heretofore been, and made no specific provision for them.

The act of May 22, 1824, (4 Gen. St. 26,) increased the duty "in all manufactures, not otherwise specified, made' of brass, iron, steel, pewter, lead, or tin, or of which either of these metals is a component material," from 20 to 25 per cent. *ad valorem,* but did not mention "tin plates." But the act of 1832, July 14th, (4 Gen. St. 588,) re-enacts this provision of the act of 1824—to-wit, "on all manufactures, not otherwise specified, made of brass, iron, steel, pewter, or tin, or of which either of these metals is a component material"—in exactly the same words, making the duty 40 per cent. *ad valorem* instead of 25; and it is manifest that this provision does not include "tin plates," because they are by the same act again made free. See section 3, p. 590, 4 U. S. St.

The act of March 2, 1833, (4 Gen. St. 629,) is instructive in the point now under consideration. It provided (section 1) for a reduction of duties in all foreign imports, where the duty exceeded 20 per cent. on the value thereof.

Manufactures of brass, iron, steel, pewter, and tin, which then paid 40 per cent. *ad valorem,* were included in this provision. The reduction was to be the excess of the duty above 20 per cent., or in other words to 20 per cent. One-tenth of this deduction was to be made on and after December 31, 1833; one-tenth on and after December 31, 1835; one-tenth on and after December 31, 1837; one-tenth on and after December 31, 1839; and on the thirty-first day of December, 1841, one-half the residue of such excess, and on the thirtieth day of June, 1842, the other half, was to be deducted. This left a duty of 20 per centum on the manufactures of brass, iron, steel, pewter, and tin on and after the thirtieth day of June, 1842.

"Tin plates," at the passage of this act of March 2, 1833, were in the free list, (not included in the manufactures of iron and tin,) and by the fourth section of the act (4 St. 630)

were continued so until June 30, 1842, during all the time these deductions were taking place in manufactures of iron and tin, and then, by section 5 of the same act, were con- tinued, *eo nomine*, on the free list after June 30, 1842, when the duties on manufactures of iron and tin were 20 per cent. *ad valorem*. The act of 1841 (5 Gen. St. 463) laid a duty on some articles then and before on the free list, and increased the duties on articles paying less than 20 per cent., but it continued "tin plates" on the free list.

Coming, then, to June 30, 1842, we find "all manufactures, not otherwise specified, made of brass, iron, steel, pewter, or tin, or of which either of these metals is a component ma- terial," paying a duty of 20 per cent., and "tin plates" on the free list. The act of August 30, 1842, (5 Gen. St. 553,) imposed a duty of 30 per cent. on manufactures of brass, iron, steel, lead, copper, pewter, and tin, not otherwise speci- fied; and a duty of $2\frac{1}{2}$ per cent. on "tin plates"—classing them with other metals. The act of July 30, 1846, (9 St. 45,) continues the duty of 30 per cent. on the above manufac- tures, and imposes a duty of 15 per cent. on "tin plates." The act of March 3, 1857, (11 St. 193,) imposed a duty of 24 per cent. on the above manufactures of iron and tin, and of 8 per cent. on "tin plates." By the act of 1861, March 2, (12 St. 196,) these manufactures are made to pay a duty of 30 per cent. *ad valorem*, and "tin plates" 10 per cent. By the act of 1862, July 14, (12 St. 551,) these manufactures were made to pay a duty of 35 per cent., and "tin plates" 25 per cent. *ad valorem*.

Coming next to the act of 1872, June 6, (17 St. 230,) we find a little different but very significant phraseology. In the prior acts, the expression has been "on all manufactures, *not otherwise specified*," made of brass, etc., leaving it to be argued that "tin plates" were a manufacture of iron and tin other- wise specified. But here the expression is on all *metals* not otherwise provided for, and *on all manufactures of metals* of which either of them is the component part of chief value, except percussion-caps, watches, jewelry, and other articles of ornament.

Now, if "tin plates" be a manufacture of metals, and were intended to be classified and taxed as such, they must come under this expression of *all manufactures* of metals, unless found among the excepted articles. But they are not found among the excepted articles, nor are they taxed, nor were they intended to be taxed by congress under this head of all "manufactures of metals," because they are taxed elsewhere, under a subsequent section of the same act, (section 4,) and at a different rate, as *"tin plates,"* *eo nomine.*

Here is an unbroken legislation by congress from 1789 to 1879, a period of 90 years, in which "tin plates" have not been included in "manufactures of tin or iron," and so taxed, but have generally been designated as "tin plates," and the duties laid on them as such specifically, and at a different rate. We find the same course to be pursued in the Revised Statutes, and if "tin plates" are not included either in "metals not herein otherwise provided for," nor among "manufactures of metals," they are not entitled to the reduction of the duty claimed by the plaintiff, and the assessment by the defendant was correct.

The case of *Dodge* v. *Arthur,* tried in the southern district of New York, before Judge Shipman, and reported in 22 Int. Rev. Rec. 402, is relied upon by the plaintiffs as an authority in support of their construction of the law on the question; and it is so. But, upon the examination of the charge to the jury in that case, it is unsatisfactory. It proceeds entirely upon the ground that the Revised Statutes have altered the law as it stood in the act of June 6, 1872. It concedes that by the act of 1872 "tin plates" were not included in the words "in all metals not herein otherwise provided for, and in all manufactures of metals of which either of them is the component part of chief value, except in percussion-caps," etc., but maintains that these precise words in the Revised Statutes, if the case is correctly understood, do include "tin plates." But by what process of expansion or inclusion this is done is not explained, and it can hardly be conceded that the charge of the court in that case was correct, especially as "tin plates" are otherwise provided for in the Revised Stat-

utes, and subjected to the same duty as in the act of 1872. If, in the commercial vocabulary, "tin plates" were known as manufactures of tin or iron, or iron and tin, there would be ground for the plaintiffs' position; but they are not so known. The agreed case concedes "that the merchandise in question * * * is only known in commerce as 'tin in plates' or 'tin plates.'"

In *Curtis* v. *Martin* it was held that the charge to the jury, on the trial of the cause, that "it has long been a settled rule of construction of revenue laws, imposing duties on articles of a specified denomination, to construe the article according to the designation of such articles as understood and known in commerce, and not with reference to the materials of which they may be made, or the use to which they may be applied," was correct. 3 How. 109. Chief Justice Taney, in this case, remarks "that this rule of construction has been followed in every circuit where the question has arisen."

In *Elliott* v. *Swartwout*, 10 Pet. 137, (12 Curtis, Ab. 46,) it was held that "worsted being a distinct article, well known in commerce under that name, worsted shawls with cotton borders, and suspenders with cotton ends, were not *manufactures of wool*, under the second section of the tariff act of July 14, 1832, (4 St. at Large, 583.) "It is a settled rule," say the court, "to construe the denomination of articles in tariff laws according to the commercial understanding of the terms used."

The judgment is for the defendant.