## ARTHUR'S EXECUTORS *v.* BUTTERFIELD.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 167. Argued February 6, 1888. — Decided March 19, 1888.

"Goat's hair goods," composed of 80 per cent of goat's hair and 20 per cent of cotton, used chiefly for women's dresses, and which were imported into the United States between January 24, 1874, and June 25, 1874, were subject to the duty imposed by the act of July 14, 1870, 16 Stat. 264, c. 255, § 21, upon "manufactures of hair not otherwise herein provided for," as modified by the act of June 6, 1872, 17 Stat. 231, and

not to the duty imposed by the act of March 2, 1867, 14 Stat. 561, c. 197, § 2, upon "women's and children's dress goods and real or imitation Italian cloths, composed wholly or in part of wool, worsted, the hair of the alpaca, goat, or other like animals"—it being found by the jury that they were not known in commerce among merchants and importers as "women's and children's dress goods."

In the absence of a settled designation of a cloth by merchants and importers, its designation as hair, silk, cotton, or woolen for the purposes of customs revenue depends upon the predominance of such article in its composition, and not upon the absence of any other material.

The words "not otherwise herein provided for" in a section in a customs revenue act, mean not otherwise provided for in that act.

To place an article among those designated as "enumerated," so as to take it out of the operation of the similitude clause of the customs revenue laws, Rev. Stat. § 2499, it is not necessary that it should be specifically mentioned.

The words "manufactures of hair" are a sufficient designation to place such manufactures among the enumerated articles.

THIS was an action at law to recover customs duties alleged to have been illegally exacted. Judgment for plaintiff. Defendant sued out this writ of error. The case is stated in the opinion of the court.

*Mr. Solicitor General* for plaintiffs in error.

*Mr. George Bliss* for defendants in error.

MR. JUSTICE FIELD delivered the opinion of the court.

This action was brought by the plaintiffs below to recover of the late collector of the port of New York certain sums of money alleged to have been illegally exacted as duties on goods imported by them. It was tried in the Circuit Court of the United States for the Southern District of New York, where the plaintiffs recovered a verdict, and to review the judgment entered thereon the executors of the collector, since deceased, have sued out this writ of error.

The complaint describes the goods imported in general terms as manufactures of hair. There were fourteen importations between the 24th of January and the 25th of June, 1874. Upon the goods, which were styled "goat hair goods," the

collector assessed duties under provisions of the act of March 2, 1867, c. 197, § 2, 14 Stat. 561, "to provide increased Revenue from imported Wool, and for other Purposes," relating to women's and children's dress goods, and real or imitation Italian cloths, composed wholly or in part of wool, worsted, the hair of the alpaca, goat, or other like animals, at six cents a square yard and thirty-five per centum *ad valorem* upon such as were valued at not more than twenty cents a square yard, and at eight cents a square yard and forty per centum *ad valorem* upon such as were valued at more than twenty cents a square yard.

The plaintiffs contended that this assessment of duties was erroneous; that the duties should have been assessed under the 21st section of the act of July 14, 1870, "to reduce internal Taxes, and for other Purposes," 16 Stat. 264, c. 255, § 21, as the goods were within its terms "manufactures of hair not otherwise provided for," and that a reduction thereon should be made of ten per centum, under the act of June 6, 1872. 17 Stat. 231. That section provides that "after the thirty-first day of December, eighteen hundred and seventy, in lieu of the duties now imposed by law on the articles hereinafter enumerated or provided for, imported from foreign countries, there shall be levied, collected, and paid the following duties and rates of duties, that is to say: . . . On hair cloth of the description known as hair seating, eighteen inches wide or over, forty cents per square yard; less than eighteen inches wide, thirty cents per square yard. On hair cloth known as crinoline cloth, *and on all other manufactures of hair not otherwise provided for*, thirty per centum *ad valorem*."

By the joint resolution of January 30, 1871, this clause was amended by the insertion of the word "herein," between the words "otherwise" and "provided." 16 Stat. 592.

The reduction of ten per cent under the act of June 6, 1872, was made upon such of the invoices as were produced, but most of the invoices had been mislaid. It was not, therefore, shown that such reduction had been made upon all of them.

On the trial it appeared that the "goat hair goods" are

fabrics manufactured of cotton, and the hair of the angora, or other goat, the warp being cotton and the woof being goat's hair; that their chief use is for women's dresses; that they are known in the trade under such specific names as brilliantines, lustrines, alpacas, and mohairs; that the goat's hair of which they are composed in part constitutes eighty per cent of the whole value, and the cotton twenty per cent.

It also appeared that crinoline cloth is made of cotton and hair, the long hair being from the tail or mane of the horse and woven into a cotton warp, the width being governed by the length of the hair, and that it is used for ladies' underwear; that hair seating is a similar fabric to crinoline cloth, the only difference being that it is more closely woven, and is used mainly for upholstering purposes.

Evidence was offered by the defendant tending to show that the goat hair goods are generally known in the trade and commerce of the country under the name of women's dress goods; but on this point the evidence was conflicting, some of the witnesses stating that they were known by their specific names as brilliantines and alpacas, and some that they were at the time of importation known as women's dress goods.

It was stipulated, for the purpose of the trial, that if the jury should render a verdict for the plaintiff it should be subject to adjustment as to formal requisites and amounts at the custom-house, under the direction of the court. And to raise the questions involved it was also stipulated, as to one of the importations that the plaintiffs had paid the duties assessed and in due time filed their written protest, appealed to the Secretary of the Treasury, and brought this action.

When the evidence was closed, the court was requested to direct a verdict for the defendant on the ground that such goat hair goods were:

1st. Women's dress goods, composed wholly or in part of the hair of the alpaca, goat, or other like animal;

2d. That they were not manufactures of hair, but were manufactures of mixed materials, and by the similitude clause were liable to duty as manufactures of cotton, the latter being assessed at a higher rate of duty than that prescribed for manufactures of hair; and,

3d. That under the act of 1870, the terms "all other manufactures of hair not otherwise provided for," meant other manufactures of hair, like those enumerated in the same section, namely, crinoline cloth or hair seating, and that there was no evidence that the goat hair goods were like them.

The court overruled the motion, and the defendant excepted. It then instructed the jury in substance as follows: That under the act of 1867, which remained in force until 1870, there was assessed a certain duty on women's and children's dresses composed wholly or in part of wool, worsted, hair of the alpaca, goat, and other like animals; that in 1870 the law was changed in some respects, so as to make the duty assessable on hair cloth, known as crinoline cloth, and all other manufactures of hair, at a less rate; that the goods upon which the duties were assessed in this case were manufactures principally of hair; that the principal value of them was of hair; that according to the evidence eighty per cent was of hair and twenty per cent of cotton; that the general language of the act of 1870 would control and guide in the assessment of duties upon them, unless they had, before the passage of the act, come to be specifically known as dress goods among merchants and importers; that the question, therefore, was whether they had acquired such a name in the trade and commerce of the country as to be specifically known by it, instead of the general name of manufactures of hair; that if they had not acquired such specific name, and were not known by it, they would come under the general name of manufactures of hair, and the plaintiffs would be entitled to recover; and that on the other hand if they had acquired such specific name, and were known by it in trade and commerce, the defendant would be entitled to a verdict.

The defendant took various exceptions to this charge, and in this court presents anew the questions raised upon the instructions refused.

The instructions were in our opinion properly refused, and the case was presented to the jury as fully as was required for their appreciation of the question involved. The goods were composed of eighty per cent of hair, and there is no provision

of law, to which our attention has been drawn, that takes goods thus composed, not having a specific commercial designation, from the general designation as manufactures of hair. The finding of the jury is conclusive that they were not known in commerce, among merchants and importers, as women's and children's dress goods. It is well settled that a designation of an article of commerce by merchants and importers, when clearly established, determines the construction of a revenue law when that article is mentioned. It was so held in *Arthur* v. *Morrison*, 96 U. S. 108, and in many other cases, which are cited in the opinion of the court in that case. In *Elliott* v. *Swartwout*, 10 Pet. 137, 151, the court said that "laws imposing duties on importations of goods are intended for practical use and application by men engaged in commerce; and hence it has become a settled rule in the interpretation of statutes of this description to construe the language adopted by the legislature, and particularly in the denomination of articles, according to the commercial understanding of the terms used. This rule is fully recognized and established by this court in the case of *Two Hundred Chests of Tea*, reported in 9 Wheat. 438."

The fact that twenty per cent of cotton entered into the composition of the goods, and only eighty per cent of them are of hair, does not change their character as manufactures of hair within the meaning of the act of 1870. Crinoline and hair seating, both of which are in that act specifically designated as hair cloth, have also cotton in their composition. The designation of a cloth, as hair, silk, or cotton, depends on the predominance of such article in its composition, and not upon absence of any other material.

The 21st section of the act of 1870 having been, as mentioned above, amended in 1871 by the insertion of the word "herein" between "otherwise" and "provided," the clause of the section is to be construed as though its language was that "after the 31st of December, 1870, in lieu of the duties now imposed by law on the articles hereinafter enumerated or provided for, imported from foreign countries, there shall be levied, collected, and paid the following duties and rates of duties,

that is to say: . . . On hair cloth of the description known as hair seating, eighteen inches wide or over, forty cents per square yard; less than eighteen inches wide, thirty cents per square yard. On hair cloth known as crinoline cloth, and *on all other manufactures of hair not otherwise herein provided for*, thirty per centum *ad valorem*." · The words "all other manufactures of hair not otherwise herein provided for" mean not otherwise provided for in the act of which they are a part. *Smythe* v. *Fiske*, 23 Wall. 374. There is no provision in that · act for other manufactures of hair than crinoline and hair seating. It therefore necessarily follows that if the goat hair goods in question are to be deemed manufactures of hair the duties are to be assessed in conformity with that act, and not according to the provisions of any other act.

The construction of the clause for which the government contends, if admitted, would lead to great embarrassment, if not insurmountable difficulty, in determining the duties to be assessed on many articles. Its position is, that by "all other manufactures of hair not otherwise provided for," is meant all other manufactures of hair similar to crinoline cloth and hair seating. If this be correct it would be impossible to say at what rate of duty such other manufactures of hair are to be assessed, whether by the square yard rate or the *ad valorem* rate. The two rates could not be indifferently applied. The natural meaning of the section is that on crinoline cloth an *ad valorem* duty shall be assessed, and a similar duty on all other manufactures of hair not otherwise provided for in the act.

The similitude clause can have no bearing on the question. That clause only provides that there shall be levied on each non-enumerated article which bears a similitude, either in material, quality, texture, or the use to which it may be applied, to any article enumerated as chargeable with duty, the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars mentioned. Rev. Stat. § 2499. To place articles among those designated as enumerated, it is not necessary that they should be specifically mentioned. It is sufficient that they are designated in any way to distinguish them from other articles. Thus the

words "manufactures of which steel is a component part," and "manufactures of which glass is a component part," have been held a sufficient designation to render the goods enumerated articles under the statute, and take them out of the similitude clause. *Arthur* v. *Sussfield*, 96 U. S. 128. Upon the same principle "manufactures of hair" must be held a sufficient designation to place such manufactures among the enumerated articles.

*Judgment affirmed.*