ROSSMAN *v.* HEDDEN, Collector.

*(Circuit Court, S. D. New York. December 12, 1888.)*

1. CUSTOMS DUTIES—CLASSIFICATION—GLAZED TILES—REV. ST. U. S. § 2499.
   Plain glazed tiles of different colors, used for hearths, bath-rooms, walls, dadoes, wainscoting, and ornamental purposes, are not "paving tiles," within the meaning of Schedule B of the tariff act of 1883, (Heyl, par. 130,) but are properly enumerated as "earthenware, * * * glazed, * * * composed of earthy or mineral substances, not especially enumerated or provided for in this act," (Schedule B, Heyl, par. 127,) and dutiable at 55 per centum *ad valorem.*

**2. SAME—EARTHENWARE GLAZED.**
The words "earthenware * * * glazed" are a sufficient enumeration of the merchandise (plain glazed tile) to take it out of the operation of the similitude clause, (section 2499, Rev. St.,) as assimilating to either paving or encaustic tile.

**3. SAME—VOLUNTARY PAYMENTS—RECOVERY.**
Duties paid after delivery of goods to importer cannot be recovered back in an action against the collector.

(*Syllabus by the Court.*)

At Law.  Action to recover excess of duty upon merchandise.

This action was brought by Adolph Rossman against Edward L. Hedden, collector of customs at the port of New York, to recover an alleged excess of duty upon certain plain glazed tiles imported into said port from Scotland and from France, by the steamers Canada, Furnessia, and Rhoetia, in February, May, and June, 1886.  The collector assessed duty thereon at 55 per centum *ad valorem*, under Schedule B of the tariff act of March 3, 1883, (22 St. at Large, c. 121, p. 495,) Heyl, par. 127, which reads as follows:

"All other earthen, stone, and crockery ware, white, glazed, or edged, composed of earthy or mineral substances, not specially enumerated or provided for in this act, 55 per centum *ad valorem*."

The plaintiff protested as to the importation by the Canada and Rhoetia, as follows:

"We protest against your decision as to the rate, 55 per centum, and amount of duties to be paid on the tiles entered by us for consumption, because they are dutiable at 20 per centum, under Schedule B, as paving tiles directly, or by virtue of section 2499, Rev. St.  If not so dutiable, then they should pay 35 per centum by similitude to encaustic tiles, under said section and schedule. We pay the excess exacted under compulsion, solely to get possession of the goods."

The protest on the importation by the Furnessia was as follows:

"We protest against your decision as to the rate and amount of duties to be paid on the tiles entered by us for consumption May 25, 1886, per Furnessia, 71,315, from Glasgow, because they are dutiable at 35% *ad val.*, under section 2499, Rev. St., by similitude to encaustic tiles, provided for in Tariff Schedule B.  We pay the excess exacted under compulsion, solely to get the goods."

The paragraphs of Schedule B, referred to in the protest of the plaintiff, read:

"Encaustic tiles, 35 per centum *ad valorem*."  Heyl, par. 129.  "Brick, fire-brick, and roofing and paving tile, not specially enumerated or provided for in this act, 20 per centum *ad valorem*."  Heyl, par. 130.

Section 2499, Rev. St., reads:

"There shall be levied, collected, and paid on each and every non-enumerated article which bears a similitude, either in material, quality, texture, or the use to which it may be applied, to any article enumerated in this title as chargeable with duty, the same rate of duty which is levied and charged on the enumerated article which it most resembles in any of the particulars before mentioned," etc.

Upon the trial it was shown by evidence that the plaintiff's importations were plain white, cream, and brown glazed tiles, used for walls,

dadoes, wainscoting, and also for the bottom and facing of hearths, for ornamenting the borders of floors, and for floors of bath-rooms and conservatories. They were not encaustic tiles. It was also shown as to the importation by the Canada that all of the goods were delivered to the importer on or before March 18, 1886, and the increased duty was not paid until May 10, 1886. At the close of the trial the plaintiff contended that the tiles in suit were "paving tiles," because in some of their uses they were laid horizontally, and any tile laid horizontally was a paving tile; that they were not earthenware, within the meaning of the tariff act of 1883; that the term "earthenware" was too general to enumerate the goods in suit; that if the jury should find they were not in fact paving tiles, then the similitude clause would apply. The defendant contended that they were not in fact "paving tiles," nor known as such at the time of the passage of the tariff act of March 3, 1883; that they were enumerated as "earthenware, * * * glazed, * * * composed of earthy or mineral substances," and that the similitude clause (section 2499, Rev. St.) had no application whatever to the merchandise, as that clause applied to non-enumerated articles only.

*Stephen A. Walker,* U. S. Dist. Atty., and *Henry C. Platt,* Asst. U. S. Dist. Atty., for defendant, cited:

*Smith* v. *Field,* 105 U. S. 53; *Arthur* v. *Sussfield,* 96 U. S. 128; *U. S.* v. *Clarke,* 5 Mason, 30; *U. S.* v. *Telegraph Co.,* 2 Ben. 362; *Jaffray* v. *Murphy,* 19 Int. Rev. Rec. 143; *Newman* v. *Arthur,* 109 U. S. 132, 3 Sup. Ct. Rep. 88; *Reimer* v. *Schell,* 4 Blatchf. 329; *Marvel* v. *Merritt,* 116 U. S. 11, 6 Sup. Ct. Rep. 207; *Siemens* v *Sellers,* 123 U. S. 276, 8 Sup. Ct. Rep. 117; *U. S.* v. *Johnston,* 124 U. S. 253, 8 Sup. Ct. Rep. 446; *Edwards* v. *Darby,* 12 Wheat. 210; Syn. Ser. 2419, 3352, 3705, 3714, 7051.

*Hartley & Coleman,* for plaintiffs, quoted:

*Maillard* v. *Lawrence,* 1 Blatchf. 504; *Arthur* v. *Fox,* 108 U. S. 125, 2 Sup. Ct. Rep. 371; *Cohen* v. *Phelps,* 2 Sawy. 531; *Cummins* v. *Robertson,* 27 Fed. Rep. 654; *Biddle* v. *Hartranft,* 29 Fed. Rep. 90; *Mason* v. *Robertson,* Id. 684; *Lloyd* v. *McWilliams,* 31 Fed. Rep. 261.

LACOMBE, J., (*orally, charging jury.*) The laboring oar of this case is with you, because it is entirely and solely a question of fact, and I shall detain you but a few minutes in formulating the precise question which you must answer under the evidence in the case.

In the first place, as to the importation by the Canada, as I have before intimated, your verdict must be for the defendant, for the reason that the payment was not in fact made to obtain possession of the goods. With regard to the importation by the Furnessia, the protest of the plaintiff restricted him to a single claim, to-wit, that these goods were similar in uses, quality, material, and texture to encaustic tiles, and should therefore pay the same duty as that paid by encaustic tiles. In the view which I take of the similitude clause, and guided by the decisions of *Smith* v. *Field,* 105 U. S. 53; *Arthur* v. *Sussfield,* 96 U. S. 128; and *Arthur* v. *Butterfield,* 125 U. S. 70, 8 Sup. Ct. Rep. 714,—I shall, as to the importations by that particular vessel, direct a verdict for the defendant.

There is left, then, for your consideration, only the importation by the Rhoetia. The old English word "ware," with which you are familiar, in the combination of hardware, tinware, etc., is a comprehensive word. It is defined by Worcester and Webster as "goods, commodities, merchandise," and in the same dictionaries the term "earthenware" is defined as "ware made of earth or clay." Reading in for the word "ware" the definition which the dictionary gives it, we will find as the definition of "earthenware," "goods, commodities, or merchandise made of earth or clay." That, you see, is a very general, broad, and comprehensive word, and it was evidently used by congress in that same sense, for we find the word "earthenware" used as the heading of a schedule which contains articles as dissimilar as a porcelain teacup, a Parian vase, a firebrick, and a slate pencil. It is sufficiently broad, this word "earthenware," to cover "tiles,"—to cover the articles imported by the plaintiff here as they appear and have been described by the witnesses. Therefore, unless they are covered by some other provision of the tariff act, they must be held dutiable as "earthenware," and the determination of the collector in that respect sustained. Now, the word "tiles" occurs twice in this tariff act,—once in combination with the word "encaustic," a specific and particular duty being laid upon encaustic tiles. It is conceded practically by both sides that these importations are not encaustic tiles. Encaustic tiles are composed of two or more kinds of clay in the same tile, moulded and mixed up together in some way, and the articles before us contain but one kind of clay in each tile. Therefore the provision in regard to encaustic tiles has no bearing on this case.

There is left, then, the clause No. 130: "Brick, fire-brick, and roofing and paving tile." The plaintiff contends that these goods fall fairly within that definition. The words "paving tile" have a plain, ordinary meaning, which any man of intelligence could determine for himself. A paving tile means a tile for paving. That is the way the word would be understood by any one who heard it or saw it in a book or in a statute. Congress, however, legislates upon these tariff acts, only after a careful examination of the condition of affairs touching the particular industry, or the particular kind of goods, with regard to which it is legislating. It looks into the history, it looks into the present condition, the uses, the material, the composition, the usages of trade, and the general use to which the article is put in the community; and of course the interpretation of an act of congress should, so far as may be, be had in the same light as that in which congress passed the act, and it is for that reason that I have allowed so voluminous a body of testimony to be imported into this case, bearing upon the character of the article, its composition, the materials of which it is made, how it is made, its qualities, its uses, and its history in the trade and commerce of this country. It was necessary to do that, in order, so far as might be, to enable you to answer the single question which goes to you; and in order that that question may be put so that you can readily carry it with you, I have reduced it to writing. It is this, and is the only question you will have to answer:

"On March 3, 1883, when this act was passed, was the character of these tiles such, and had their use up to that time been such, that they would fairly be included within the term 'paving tiles,' as used by congress in the section quoted; that is, the section providing for a duty on brick, fire-brick, and roofing and paving tiles?"

Now, you will perceive, in the first place, that it is immaterial whether or not they are now used for paving. Congress legislated under the facts as they were at the time; and you will further perceive that their use at that time for such purposes must have been sufficiently substantial, when compared with their other uses, if any, to suggest this particular kind of tile to any one who might at that time be preparing an exhaustive list of paving tiles or tiles for paving. If—taking into consideration the condition of the trade at that time, the size, the composition, the character of these articles, their adaptability to uses, and the uses they were put to at the time the act was passed—you are satisfied that they were then paving tiles, your verdict will be for the plaintiff; otherwise it will be for the defendant.

Verdict rendered for defendant.