Augustus D. Iasigi *vs.* Joseph A. Iasigi & another, trustees.

Suffolk. December 11, 1893. — March 9, 1894.

Present: Allen, Holmes, Morton, Lathrop, & Barker, JJ.

*Trust — Will.*

A testator by the fourth article of his will left a sum of money in trust to pay the income to his wife during her life, and after her death to distribute the principal to his children. By the fifth article he established a trust for the shares of his daughters, and by article six he provided that "All moneys herein directed to be given to each of my sons A. and T. shall be held, invested, and managed by my said trustees in separate trusts, and the net income of his several share paid to each of said sons" during life, with remainder over. By a subsequent article provision was made for another son, and by article nine the residue of the property was given to trustees in trust to invest and manage the same, paying the income to all the children equally, and on a certain day, or sooner if the fund was large enough to give to each child a "sum of money amounting to not less

than $50,000," to distribute the principal among the children. In a later article he authorized his trustees to sell the trust property. *Held,* that the share of A. in the residue, as given in article nine, was to be held for him in trust under the provisions of article six, and that he was not entitled to have it paid over to him absolutely.

BILL IN EQUITY, against Joseph A. Iasigi and Francis C. Welch, trustees under the will of Joseph Iasigi, to compel them to pay over to the plaintiff absolutely, free of trust, his share of the residue of the estate of the testator. The case was heard by *Knowlton,* J., on the pleadings, and reserved for the consideration of the full court. The facts appear in the opinion.

*J. W. Cummings & W. W. Hoover* (of New York), for the plaintiff.

*L. S. Dabney,* for the defendants.

ALLEN, J. The testator died on May 22, 1877, leaving a widow and five daughters and five sons. The will was dated May 5, 1877.*

By article 3 of his will he left certain real estate to his wife for life, and after her death to his children.

By article 4 he left $200,000, in trust, to pay the income to his wife during her life, and after her death the principal to his children.

By article 5 he established a trust for the shares of his daughters. Whether this trust was limited to their shares in the fund created by article 4 was a point not conceded.

By article 6, he provided that " All moneys herein directed to be given to each of my sons Augustus D. Iasigi and Thomas G. Iasigi shall be held, invested, and managed by my said trustees in separate trusts, and the net income of his several share paid to each of said sons " during life, with remainder over.

By article 7 he established a trust for " all the moneys herein directed to be paid to my son Albert William Iasigi," until he should attain the age of twenty-five years, at which time the principal was to be paid to him. Power of disposition by will was also given to this son, after attaining the age of twenty-one years.

---

\* The material provisions of the will may be found in full in the report of the case of *Parker* v. *Iasigi,* 138 Mass. 416.

By article 9 all the rest and residue of the property was given to trustees in trust, to invest and manage the same, paying the income to all the children equally; and on January 1, 1880, " or sooner, if such distribution will give to each of my children a sum of money amounting to not less than fifty thousand dollars, they shall pay over and distribute the principal of said last mentioned trust fund to and among my children who shall then be living, and the issue, if any, of any deceased child or children, by right of representation."

By article 10, he made provision for an advancement of $25,000 to each of his other two sons, " and the sums so advanced shall in the final division of my estate be deducted from the shares of said" two sons, with interest.

By article 11, the trustees were authorized to sell all or any part of the trust property, and any other property which they might acquire as trustees.

The question now presented is, whether the plaintiff's share in the residue, as given in article 9, is to be held in trust for him under the provisions of article 6, or whether he is entitled to have the same paid over to him.

When this will was heretofore under the consideration of the court, upon the question whether the shares of the daughters and of the present plaintiff in the real estate devised in article 3, after the death of the testator's wife, were to be held in trust for them, it was determined that they were not to be so held in trust. *Parker* v. *Iasigi*, 138 Mass. 416. The question now presented was not then directly before the court for decision, but the court was led into an examination of the whole will for the purpose of getting at the intention of the testator in the disposition of his property, and in rendering the judgment it was said: " It appears by the latter portion of the ninth article that the testator contemplated that the final distribution of this residue should be made in money, and ample authority was given in the eleventh article to convert it into money. The gifts in the fourth and ninth articles would naturally be referred to as moneys." (pp. 422, 423.) Upon a re-examination of the will, in the light of the further and elaborate arguments which have now been addressed to us, this still seems to us to be the correct view to take of the will; and the direction in article 6,

that "all moneys herein directed to be given," etc., includes the moneys to which the two sons therein named would be entitled under article 9, upon the final distribution therein provided for. In this respect, although there are slight variations in the phraseology of the different articles, these sons and the daughters were put substantially on the same footing, and the shares of all of them in the residue were intended to be kept in trust. The gift of the residue does not stand on the same ground as the gift of the real estate in the third article. The real estate was not to be sold without the wish of the testator's wife. But it was contemplated that the residue should be converted into money or its equivalent, before distribution. This makes a distinction between the destination of the real estate and of the residue.

It is contended on the part of the plaintiff, that, if the testator had intended that the shares of these sons and of the daughters in the residue should go into these separate trusts for their respective benefits, he would have provided that they should do so at once upon his death, and he would not have directed that the property should be held together in trust for a period of less than three years. We are not informed what kind of property the residue consisted of at the time of the testator's death. It would seem, however, that he thought it would be more beneficial to his estate not to require it to be closed up, and the residue divided and distributed, until it could be substantially converted into money or its equivalent.

It is further contended that the trustees' power to sell under the eleventh article was merely for the purpose of reinvestment, and not for the purpose of distribution. This position we deem untenable. As soon as the distribution of the residue would give to each child a sum of money amounting to not less than fifty thousand dollars, the trustees were to pay over and distribute the principal. This, coupled with the power of sale given in the eleventh article, contemplates the conversion of the residue into money, or such securities as are regarded as a substitute for and equivalent of money, such as mortgage notes, government, state, and municipal stocks or bonds, etc., before making the distribution.

It is further contended that the words in the ninth article,

"a sum of money amounting to not less than fifty thousand dollars," are used rather as a measure of value than as a direction to pay over money. If so, it goes to show that the use of the term "moneys" in the sixth article is equally broad, and that it there means all such moneys as under the ninth article are to be paid over to them; that is, moneys or the equivalent of moneys.

It is further contended, that the meaning of the sixth article is best understood by referring it to article 4, under which these two sons named in article 6, in common with all the rest of the testator's children, would be entitled after the death of the testator's wife to the $200,000 in remainder. But article 6 is not limited to what precedes. It is a general direction, applicable to all moneys which are given to these two sons by the will. The words "all moneys herein directed" mean both hereinbefore and hereinafter directed.

It is further contended that upon the above construction the words at the end of the fourth article are unnecessary, — "holding, nevertheless, in trust such distributive shares of my estate as are herein directed to be so held," — and that, being inserted, the trust created by the sixth article more naturally is to be treated as referring to and limited by the bequest in the fourth article ; and that the omission of any such words at the end of article 9 confirms this view. This argument is not without force. It is to be observed, however, that when article 4 was written no trust had been declared in any earlier portion of the will, and this clause would serve to indicate, at that stage of reading the will, that the shares of certain of the children in the fund of $200,000 were still to be held in trust. In article 9 no such provision was necessary, as the testator had then declared the trusts which in different articles applied to eight of his children.

If the plaintiff's construction of the will were to be adopted, it would follow that Albert William, who was a minor at the date of the will, and who therefore could not have been twenty-five at the latest period fixed for the final distribution of the residue, viz. January 1, 1880, would get his share of the residue before reaching the age of twenty-five. But in the seventh article, which deals with the share going to him, the testator

apparently in all parts of it, as certainly in the last part of it, was referring to all that would be going to him under article 9 as well as under article 4; and he intended that no part of the principal should be paid to the said son until he should attain the age of twenty-five years.

On the whole, we have come to the conclusion that the testator intended that the plaintiff's share of the residue should be held in trust.                                              *Bill dismissed.*