## UNITED STATES v. WHIFFEN et al.

District Court, S. D. Ohio, W. D.    November 29, 1927.

No. 3022.

Contempt ⬦⮑46—Limitation of one year in Clayton Act is general, and applies to all contempt proceedings. (Clayton Act, § 25 [28 USCA § 390]).

The provision of Clayton Act, § 25 (28 USCA § 390 [Comp. St. § 1245e]), that "no proceeding for contempt shall be instituted against any person unless begun within one year from the date of the act complained of," is not limited to contempts which are also crimes dealt with in the preceding four sections (28 USCA §§ 386–389 [Comp. St. §§ 1245a–1245d]), but is general, and applies to all contempt proceedings.

Information by the United States against Calvin U. Whiffen and others for contempt. On motion to dismiss and demurrer to motion. Demurrer overruled, and motion to dismiss granted.

Porter R. Chandler and W. H. Kenyon, Jr., Sp. Asst. Attys. Gen., for the United States.

Robert R. Nevin (of Nevin & Kalbfus) and Ezra M. Kuhns, both of Dayton, Ohio, Frank F. Dinsmore (of Dinsmore, Shohl & Sawyer), of Cincinnati, Ohio, and E. H. Sykes and E. H. Green (of Sullivan & Cromwell), both of New York City, for defendants.

HICKENLOOPER, District Judge. By motion to dismiss certain charges contained in the information in contempt and demurrer to this motion, treating the same as a special plea in bar, counsel have presently raised the question of the statute of limitations, if any, applicable to contempt proceedings, which they had contemplated raising under the plea of not guilty. This involves a consideration of sections 24 and 25 of the Clayton Act (Act Oct. 15, 1914, c. 323, 38 Stat. pp. 730, 739,

740 [28 USCA §§ 389, 390; Comp. St. §§ 1245d, 1245e]). This act is entitled "An act to supplement existing laws against unlawful restraints and monopolies, and for other purposes," and before passing to a consideration of sections 24 and 25 it is to be noted that the act in its entirety is a congeries of enactments supplementing existing laws as to several separate and distinct subject-matters. In the case of Sandefur v. Canoe Creek Coal Co., 293 F. 379, 380 (C. C. A. 6), the court recognized this fact, saying:

"The first eight sections pertain directly to the subject of trusts and monopolies (Comp. St. §§ 8835a–8835h); section 9 (Comp. St. § 8602) concerns interstate commerce; section 10 (Comp. St. § 8835i), combinations among common carriers; section 11 (Comp. St. § 8835j), proceedings to enforce certain provisions of the act; sections 12–16 (Comp. St. §§ 8835k–8835o), antitrust procedure and remedies; sections 17–19 (Comp. St. §§ 1243a–1243c), regulations of injunction and restraining orders in all cases; section 20 (Comp. St. § 1243d) limits the power of an equity court to issue any injunction in a certain class of cases, viz. between employer and the employee; and sections 21–24 (Comp. St. §§ 1245a–1245d) pertain to procedure in any District Court, punishing contemptuous disregard of any order of such court, providing the act constituting contempt is also a criminal offense."

In this case, which is the only one to which we have been referred directly bearing upon the question here involved, section 25 is not allocated or grouped with any other sections as dealing with a distinct subject-matter. Sections 21 to 24, inclusive (28 USCA §§ 386–389 [Comp. St. §§ 1245a–1245d]), are grouped together as dealing with procedure and punishment of contempts of court, where the contemptuous act or thing done is of such character as to constitute also a criminal offense under any statute of the United States, or under the laws of any state in which the act was committed. Whether or not section 25 is to be considered as dealing with a separate subject-matter, and as applicable, in accordance with its terms, to all contempts, as distinguished from those included in the provisions of sections 21 to 24, or, otherwise expressed, whether the words "that nothing herein contained shall be construed to relate to" all other types of contempt, are applicable to section 25, so as to confine the operation of section 25 only to contempts in which the contemptuous act or thing done is also a criminal offense, is the precise question now

23 F.(2d)—23

presented. These two sections read as follows:

"Sec. 24. That nothing herein contained shall be construed to relate to contempts committed in the presence of the court, or so near thereto as to obstruct the administration of justice, nor to contempts committed in disobedience of any lawful writ, process, order, rule, decree, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States, but the same, and all other cases of contempt not specifically embraced within section twenty-one of this act, may be punished in conformity to the usages at law and in equity now prevailing.

"Sec. 25. That no proceeding for contempt shall be instituted against any person unless begun within one year from the date of the act complained of, nor shall any such proceeding be a bar to any criminal prosecution for the same act or acts; but nothing herein contained shall affect any proceedings in contempt pending at the time of the passage of this act."

Both parties to this information in contempt contend for a precisely literal construction of the language used by Congress— the defendants contending that the words "no proceeding for contempt" are all-inclusive and too clear to call for construction by the court; the government contending that the words "nothing herein contained" refer to all that portion of the Clayton Act which deals with procedure and punishment for contempt, including section 25, and urge in support of this contention that these sections not only appear in the act as finally adopted, but also appeared in their respective order in the Clayton Contempt Bill, which passed the House, but failed of passage in the Senate, at the Sixty-Second Congress.

Both contentions are equally logical, for while it appears that sections 21 to 25, inclusive, deal with but a single subject-matter, contempts, and the procedure to be followed and scope of power in the courts to punish for contempt, and the words "nothing herein contained" might therefore well refer to all provisions relating to this separate title or subject-matter in its entirety, it cannot be denied, and with equal force, that Congress may well have believed that it was legislating, and intended to legislate, upon two related, but distinct, subject-matters, both when it passed the Clayton Act and considered its immediate ancestor, the Clayton Contempt Bill, viz.: (1) Procedural regula-

tion, including provision for a jury trial and the fixing of maximum penalty, where the contemptuous act was also a criminal offense; and (2) the enactment of a statute of limitations applicable to all contempts.

Since sections 21 to 25 of the Clayton Act as passed are carried bodily and verbatim from the original Clayton Contempt Bill, where they appeared in the same relative order (section 24 being proposed section 268d and section 25 being proposed section 268e of the Judicial Code), the question of congressional intent, to deal with separate subject-matters or titles of the more general subject of contempts, would arise under the language used in the earlier act, as well as that of the later, although in the later act many additional subjects were covered. The ambiguity arises solely from the use of the words "herein contained."

If Congress intended to deal with but one title or subject-matter in sections 21 to 25, inclusive, the language of section 24 limits the scope and application of section 25 to such contempts as were also criminal offenses, a position which might seem, to some extent, at least, to be supported by the clause of section 25, "nor shall any such proceeding be a bar to any criminal prosecution for the same act or acts." If Congress intended to deal with such contempts only in sections 21 to 24, inclusive, and then turned its attention to providing a statute of limitations applicable to all contempts, a different subject-matter, the words "herein contained" would be applicable only to the provisions of sections 21 to 24, inclusive.

In construing the provisions of this act, neither the committee reports, nor the statements made by committee members in charge of the bill, nor by Mr. Clayton, its author, materially assist the court to a determination of this intent. When the Clayton Act was finally reported by the committee (63d Cong., 2d Sess., H. R. Report No. 627), the report merely pointed out that the contempt sections were repetitions of the bill introduced by Mr. Clayton in the preceding Congress. In the debates in the House, Mr. Webb (a member of the Judiciary Committee in charge of the bill) stated, as is provided by present section 24, then section 22, that this section provides "that nothing * * * contained [in this bill] shall be construed to relate to contempts committed in the presence of the court," etc. In his discussion of the earlier bill, however, Mr. Webb, who then occupied a similar committee position, after discussing section 4 of the Clayton Contempt Bill, proposed section 268d of the Judicial Code,

and section 24 of the Clayton Act, made the following statement: "Section 5 or 268e makes the statute of limitations in such cases and in all contempt cases one year from the act complained of." Cong. Rec. vol. 49, p. 8803. Nor does the House report of the earlier bill (H. R. No. 613, 62d Cong., 2d Sess.) throw any light upon our inquiry, for sections 268d and 268e are separately treated, and each is treated as if given literal construction. Thus this committee report provides: "Section 268d excepts from the operation of the Act contempts in the presence of the court," etc., and later "section 268e bars proceedings for contempt unless begun within one year from the date of the act complained of. * * *" There is thus no limitation as to the scope of application to be given to "proceeding for contempt" and no definition of the meaning of "herein contained"; that is, there is nothing indicative of whether Congress intended to deal with a single or with two subjects.

In the debate on the Clayton Contempt Bill in the Sixty-Second Congress, Mr. Clayton, the author and sponsor of the bill and a member of the committee which reported it, does state that objection had been raised on the ground that the bill would probably detract from the power of the courts to enforce their decrees of dissolution of combinations denounced by the Anti-Trust Law, and continued: "We have met that objection by providing in this bill that it shall not apply in any case where the United States is a party complainant." But here, too, as elsewhere, it does not appear whether the objection was founded upon the possibility of requirement of a jury trial and the limitation of penalty, or upon the limitation. Cong. Rec., vol. 48, pt. 9, p. 8878. None of these reports or committee member statements is wholly inconsistent with either contention, except the emphatic statement of Mr. Webb, as to the Clayton Contempt Bill, that the statute of limitations in such cases "and in all contempt cases" is placed at one year. If admissible at all, or helpful in the least, their persuasiveness preponderates in favor of the defendants' contention.

The Congressional committee reports and debate failing to clearly point out the congressional intent, we are constrained to turn for a determination of this intent to the act itself. No rule of construction is more fundamental than that the congressional intent must be derived from the language used, but where an ambiguity has arisen, as here, the act should be considered in its entirety; and it may be presumed that, where the same

words which cause the ambiguity are used elsewhere in the act, Congress intended all uses to carry the same import. Thus, giving simple words their usual or customary meaning, if particularity is shown throughout the act to limit the scope of general provisions, wherever an intent to so limit might be doubted, a presumption against intent to limit the effect of a general provision would arise from the very absence of express and explicit limitation.

Sections 17 to 20, inclusive (28 USCA §§ 381–383, 29 USCA § 52), constitute what had been introduced at the previous session of Congress as the Clayton Injunction Bill. Sections 21 to 25, inclusive, constituted what, at the previous session, was known as the Clayton Contempt Bill. Thus sections 17 to 25, inclusive, were of single authorship, and were before Congress upon two occasions. They should therefore be examined together in our effort to construe the language used.

When we come to the second paragraph of section 20, we find the scope of its provisions expressly limited to injunctions in labor disputes, as distinguished from *all* restraining orders or injunctions, which were dealt with in sections 17 to 19. The scope of this section is carefully defined by the use of the words "no such" restraining order, thus showing intent to particularize or explicitly limit its application. Again, when we come to section 22, we find this same particularity. This section provides that, whenever it shall be made to appear that any person has been guilty "of such" contempt (as described in section 21), certain procedure shall be followed. In the second paragraph of this section a jury trial is provided "in all cases within the purview of this act." This has been construed to refer exclusively to contempts embraced in section 21. Sandefur v. Canoe Creek Coal Co., supra.

By section 23 intent to limit the enactment to contempts which were also criminal offenses is shown by the use of the words "any person so accused." It is only in the third paragraph of section 22 that general language is used which might be applicable to all contempt proceedings. There it is provided that "in no case shall the fine to be paid to the United States exceed, in case the accused is a natural person, the sum of $1,000, nor shall such imprisonment exceed the term of six months." This is but one instance of the use there of the words "in any case" and probably forms one basis for the addition of section 24. Another reason for the addition of section 24 is clearly that there may be no possible confusion arising

from the enactments then under consideration. Assurance is made doubly sure. But this assurance against misinterpretation is most naturally appended at the end of the affected provisions in the usual or ordinary instrument.

Two observations occur from the fact just noted. The first is that there was some definite purpose in adopting the order in which sections 24 and 25 of the Clayton Act appeared both in this act and in the Clayton Contempt Bill. If section 24 was to have application to section 25, the only natural inclination would be to reverse their order. The other observation is that section 24 is in substance, effect, and true purpose, a proviso. Its purpose and effect would have been in no way changed, had it begun with the word "provided," as, for example, in the last part of the third paragraph of section 22. The first of these observations tends strongly to show that Congress intended to deal with separate subjects in sections 21 to 24 and section 25. Under the second observation it is clear that exceptions or provisos will be construed as having reference only to that which precedes.

Reverting to our observations as to particularity of expression and care in defining scope and limitation in other parts of the act, including section 24, we find a total absence of any limitation whatever in section 25. "No proceeding for contempt shall be instituted against any person unless begun within one year from the date of the act complained of." The addition of the clause "nor shall any such proceeding be a bar to any criminal prosecution for the same act or acts" is but another example of care against misinterpretation. This clause but makes more glaring the absence of any limitation whatever in the clause immediately preceding. Throughout the act, Congress was explicit and most careful in limiting the general language wherever limitation was intended, and we cannot believe that, if it were intended by section 25 to fix a statute of limitation only for such contempts as formed the subject-matter of sections 21 to 24, inclusive, Congress would not have been equally explicit, or would not have used appropriate words to express such intent, such words as "no such proceeding," "no proceeding for contempt within the purview of this act," or "no contempt covered by section 21." No such words of limitation are found, and the language of the Supreme Court in the case of McCluny v. Silliman, 3 Pet. 270, 278 (7 L. Ed. 676), also dealing with a statute of

limitations, seems applicable to the present case:

"Where the statute is not restricted to particular causes of action, but provides that the action, by its technical denomination, shall be barred, if not brought within a limited time, every cause for which the action may be prosecuted is within the statute. * * * In giving a construction to this statute, where the action is barred by its denomination, the court cannot look into the cause of action."

This conclusion that Congress was in fact intending to deal with procedure and punishment of one type of contempts by sections 21 to 24, inclusive, and with the related, but different, subject of limitations in all classes of contempts in section 25, and that there was no purpose that section 24 should have any application whatever to section 25, is further emphasized by the fact that the contempts which also constitute criminal offenses comprise but a relatively small portion of all contempts. Section 24 limits the effect "of this act" to this single class and small proportion of contempts. If "the act" is to be considered as sections 21 to 24, by which a new procedure is created, this is a very reasonable limitation; but the act, up to and through section 24, deals with so small a proportion of charges of contempt that we cannot believe that, if section 25 were intended to relate only to these, (Congress would not have so expressly stated, rather than to have adopted language which includes all of the vastly greater mass. This, we say, emphasizes the position taken.

It is immaterial whether this determination is placed upon the doctrine that the language used in section 25 is so clear as to need no interpretation (see U. S. v. Fisher, 2 Cranch, 358, 2 L. Ed. 304; Michaelson v. U. S., 266 U. S. 42, 68, 45 S. Ct. 18, 69 L. Ed. 162, 35 A. L. R. 451; Railway Co. v. Naylor, 73 Ohio St. 115 et seq., 76 N. E. 505), or upon the doctrine that Congress cannot be presumed to have been willing to fix a shorter statute of limitation for this small body or class of contempts which also constitute criminal offenses, and which for that reason may seem more aggravated, than for other contempts of the authority and dignity of the courts (cf. Holy Trinity Church v. U. S., 143 U. S. 457, 472, 12 S. Ct. 511, 36 L. Ed. 226), or upon the doctrine that in sections 21 to 24, inclusive, Congress was dealing with a distinct subject-matter, and when a consideration of section 25 was reached "regulations of a suit in court no longer employ the mind of the Legislature"

(U. S. v. Fisher, supra), or upon the doctrine that it is only by so holding that complete and full effect can be given to both section 24 and section 25. All aids to construction but serve to emphasize the conclusion.

It is urged by the government that the words "herein contained" must refer either to the section, the entire act, or to the title, where the act covers more than a single subject-matter. Cf. May v. Simmons (C. C.) 4 F. 499, 501; Arthur v. Butterfield, 125 U. S. 70, 76, 8 S. Ct. 714, 31 L. Ed. 643; Arthur v. Vietor, 127 U. S. 572, 576, 8 S. Ct. 1225, 32 L. Ed. 201. This hypothesis in no wise conflicts with our present conclusion, for by considering sections 21 to 24, inclusive, as one title, and section 25 as another title, full force can be given both to the words "nothing herein contained," as referring to its title or part of the act, and to the words "no proceeding for contempt." Except by the adoption of this construction, either the scope of section 24 or of section 25 must be changed and limited by judicial construction.

It is also said that the United States is entitled to a longer statute of limitations than the ordinary litigant, and that this can be accomplished by restricting the application of section 25 to so-called civil contempts, or civil contempts in which the contemptuous act also constitutes a criminal offense. It is clear that in ordinary statutes of limitation the sovereign is bound only if the intent to so include the sovereign within the provisions of the statute is specific and expressed. In the instant case, however, it must be held that Congress had in contemplation the somewhat indistinct difference between civil and criminal contempts. While contempt proceedings have been said to be sui generis (Myers et al. v. U. S., 264 U. S. 95, 44 S. Ct. 272, 68 L. Ed. 577), all contempts are in their nature partly criminal. All are punishable by fine and imprisonment, and part or all of such fines may be paid to the sovereign. All include elements of affront and resistance to the authority and dignity of the court. All are based upon a contemptuous disregard of the courts' decrees or obstruction to the administration of justice. In view of this, it is impossible to so limit and restrict this act as to make it applicable only to civil contempts, as the government contends. Nor can the courts judicially legislate in view of claims of inefficiency or inadequacy in the governmental service, the fact that the government is slow to learn of contempts or is slower to act, or the fact that governmental action is impeded by de-

partmental regulations and "red tape." All contempts being quasi criminal in their nature, it must be presumed that the intent to include the government was, in this instance, at least, specific.

It might also be objected that, if the limitation provided by section 25 is to apply to all contempts, this section must be considered as an unconstitutional restriction of the inherent powers of the court. Statutes of limitation are now favored and liberally construed as statutes of repose, and we feel that, even if universally applied, the provisions of section 25 come well within the limits of proper regulation, the propriety and legality of which were recognized in Michaelson v. U. S., supra, page 66 (45 S. Ct. 18).

By construing sections 21 to 24, on the one hand, and section 25, on the other, as dealing with separate subjects, and section 24 as constituting nothing more nor less than an exception or proviso, and thus as affecting only that which precedes, the scope of all sections is clear and distinct. It is said that the words "herein contained" have never been and cannot be construed as meaning "hereinbefore," citing Iasigi v. Iasigi, 161 Mass. 75, 36 N. E. 579; Arthur's Executors v. Butterfield, 125 U. S. 70, 8 S. Ct. 714, 31 L. Ed. 643; State ex rel. v. Glenn, 7 Heisk. (54 Tenn.) 472; Arthur's Executors v. Victor, 127 U. S. 572, 576, 8 S. Ct. 1225, 32 L. Ed. 201; Smythe v. Fiske, 23 Wall. 374, 381, et seq., 23 L. Ed. 47. Granted, however, that the Clayton Act is, as we have said, a congeries or aggregation of a number of separate enactments, and that sections 21 to 24, inclusive, constitute the whole of one of these enactments or a single subject-matter, the decision herein announced in no wise conflicts with the doctrine of the cases cited. With regard to those sections which had previously comprised the Clayton Injunction Bill (sections 17 to 20), it is manifest that Congress dealt with two separate and distinct subjects: (1) The granting of preliminary restraining orders and injunctions in all cases; and (2) a definition (perhaps merely declaratory of the common law) of the right of the courts to grant injunctions in cases involving labor disputes. It is not any more unreasonable to conclude that in the Clayton Contempt Bill, incorporated into the Clayton Act, sections 21 to 25, inclusive, Congress was also dealing with two subjects. Each original bill covered two different and distinct matters.

Jealous as all courts are of their dignity and of obedience to their lawful decrees, and zealous as all courts must be for the protection of the force and inviolability of their authority, we have irresistibly come to this conclusion upon careful study of the act and the authorities cited. Notwithstanding a natural inclination to punish disobedience of our orders, if and when called to our attention, we feel constrained to overrule the demurrer to the motion to dismiss or special plea in bar for the reasons hereinabove stated. The demurrer being overruled, and in our opinion the special plea in bar stating a good defense of the running of the statute of limitations, it follows that the several charges which show upon their face that such statute has run must be dismissed, and order may be drawn accordingly.