## SMYTHE v. FISKE.

Under the Tariff Act of July 30th, 1864 (13 Stat. at Large, 210), "silk ties"
are chargeable with a duty of 50 per cent. *ad valorem.* They fall under
the closing words of the eighth section of that act which enacts "that on
all manufactures of silk, or of which silk is the component material of
chief value, *not otherwise provided for*, 50 per cent. *ad valorem*," shall be
charged. The words "not otherwise provided for," mean not otherwise
provided for by previous parts of the section of which they make the
closing words; and so exclude reference to the acts of 1861 and 1862,
which laid a duty of but 35 per cent. on "articles worn by men, women,
or children, of whatever material made."

ERROR to the Circuit Court for the Southern District of
New York; in which court Fiske sued Smythe, collector, in
December, 1868, to recover money alleged to have been
illegally exacted by the said defendant, as collector, for du-
ties upon imports.

The things in respect to which the duties were exacted
were *silk neck-ties,* imported in October, 1868.

The collector had exacted a duty of 60 per cent. upon
them, against the payment of which the defendant *pro-
tested,* because, as he alleged, silk neck-ties were liable to
a duty of but 35 per cent.

It was shown in evidence that the neck-ties in question
were made of silk, folded and ironed, turned over and
pressed by hand, the ends being afterwards stitched; that

they were known in trade and commerce as "silk ties," and never as "scarfs" or as articles of ready-made clothing.

The true decision of the question depended upon the right interpretation of certain acts of Congress, referred to and relied on by the two parties respectively. The enactments referred to are as follows:

The twentieth section of an act of August 30th, 1842,* after laying duties on a large number of enumerated articles, thus enacted:

"There shall be paid on every non-enumerated article which bears a similitude, either in material, quality, texture, or the use to which it may be applied, to any enumerated article chargeable with duty, the same rate of duty which is charged on the article which it most resembles in the particulars mentioned. If any non-enumerated article resembles equally two or more enumerated articles on which different rates of duty are chargeable, there shall be paid on such article the rate of duty chargeable on the article it resembles paying the highest duty; and on all articles manufactured from two or more materials, the duty shall be assessed at the highest rate at which any of its component parts may be chargeable."

An act of July 30th, 1846,† imposed a duty of 30 per cent. *ad valorem* upon the articles of merchandise specified in a schedule annexed to it, and embracing among other things,

"*Articles worn by men,* women, or children, of whatever materials composed, made up or made wholly or in part by hand, not otherwise provided for."

An act of May 2d, 1861,‡ imposed a duty of 30 per cent. upon the articles therein enumerated. Among them were "articles worn by men," &c., as specified in the act of 1846, and described in the same terms. Another section enacted that upon certain specified articles of silk (neck-ties not being among them), and upon

"All other manufactures of silk or of which silk shall be the component material of chief value, a duty of 30 per cent. *ad. valorem* shall be paid."

---

* 5 Stat. at Large, 565.          † 9 Id. 42, § 1.          ‡ 12 Id. 191, § 22.

By an act of July 14th, 1862,* an additional duty of 5 per cent. was imposed upon " articles worn by men," &c., repeating the language of the act of 1846 in describing them.

Up to this date it seemed to be admitted that silk neckties would pay but 30 or 35 per cent. at most.   However, on the 30th July, 1864, Congress passed another act, an act entitled "An act to *increase* duties on imports, and for other purposes."

This act, though not in substitution of all prior acts laying duties on imports, was, nevertheless, an act which went over a great field of duties on imports, and laid a vast number of duties in lieu of former ones.   It covered sixteen pages of the statute-book, and had in it twenty-nine sections.

Teas, sugar, confectionery, molasses, brandy, spirits, cordials, liquors, bay rum, wines, ale, porter, beer, cigars, snuff, tobacco, iron, tin, steel, copper, lead, and zinc of many different sorts and differently fabricated; diamonds, wool, and manufactures of wool, sheepskin, carpets and carpeting, women's dress goods, shirts, drawers, hosiery, manufactures of worsted and cotton, cotton velvet, linens, and manufactures of flax, spun silk, earthenware, stoneware, and china, slates, clay, glass, a large variety of drugs, bristles, lemons, pepper, salt, books, gunpowder, mineral water, marble, soap, and several other articles were all affected by its provisions.

This act of July 30th, 1864, by its eighth section thus enacted:

"SECTION 8. In lieu of the duties heretofore imposed by law, on the articles hereinafter mentioned, there shall be levied, collected, and paid on the goods, wares, and merchandise enumerated and provided for in this section, imported from foreign countries, the following duties and the rates of duty, that is to say—

" On spun silk for filling in skeins or cops, 25 per centum *ad valorem*.   On silk in the gum, not more advanced than singles, tram, and thrown on organzine, 35 per centum *ad valorem*.   On floss silks, 35 per centum *ad valorem*.   On sewing silk in the gum or purified, 40 per centum *ad valorem*.   On all dress and

---

* 12 Stat. at Large, 543, § 13.

piece silks, ribbons, and silk velvets, or velvets of which silk is the component material of chief value, 60 per centum *ad valorem.*

" On silk vestings, pongees, shawls, *scarfs,* mantillas, pelerines, handkerchiefs, veils, laces, shirts, drawers, bonnets, hats, caps, turbans, chemisettes, hose, mitts, aprons, stockings, gloves, suspenders, watchchains, webbing, braids, fringes, galloons, tassels, cords, and trimmings, 60 per centum *ad valorem.*

" *On all manufactures of silk* or of which *silk is the component material of chief value,* NOT OTHERWISE PROVIDED FOR, 50 per centum *ad valorem.*"

In addition to this act of 1864, an act of 1865* laid a duty of 60 per cent. " on ready-made clothing of silk, or of which silk should be a component part."

The view of the importer, the plaintiff in the case, was that "silk ties" were plainly within the terms "articles worn by men, women, and children," and, therefore, plainly and specifically provided for by the acts of 1861 and 1862, imposing the first, 30 per cent., and the second, a 5 per cent. additional.

The collector apparently considered the act of July 30th, 1864, as a new tariff system so far as rates of duties were concerned, and finding " silk scarfs " enumerated and taxed at 65 per cent., while " silk ties " were not enumerated, and assuming that " silk ties " bore a closer similitude to silk scarfs than to anything else, went back and availed himself of the twentieth section of the act of August, 1842, which fixed on every non-enumerated article which bears a similitude in material, quality, or texture, or to the use to which it may be applied, to any enumerated article, chargeable with duty, the *same rate of duty* which is charged on the article which it most resembles in the particulars mentioned. He was ready also to assert that they were " ready-made clothing of silk," and so taxable under the act of 1865 with 60 per cent.

It might be, however, that neither the view of the importer nor that of the collector was a right one, and that there might be yet a third view differing from both.

---

* Act of March 3d, 1865, § 3, 13 Stat. at Large, 493.

The question about this third view arose on the concluding words of the eighth section, above quoted, of the act of July 30th, 1864, in these words:

"On all manufactures of silk or of which silk is the component material, *not otherwise provided for.*"

What was the meaning of these italicized words? Was the act of 1860 a complete tariff act as to silk, and did they mean not provided for by preceding parts of the section of which they made the closing words, or was the act only additional to former tariff acts about silk, and did they mean not provided for by former *acts?*

This, as already said, was a third and new question, and according as it was answered in one way or in the other, the judgment obviously was to be with the importer or with the collector.

The court below in charging the jury said:

"When Congress provided in respect to articles non-enumerated, but yet similar to those which are enumerated, they did not mean simply and only to provide for articles that are specified by name, but they meant to provide for articles that did come within a specific designation found in existing laws. They foresaw, or perhaps had learned, that with the utmost care and painstaking of the legislature to provide for duties upon goods in various classes, in such classification as they deemed the interest of the country required, there would nevertheless appear occasionally goods which could not be assigned a place in the law by any designation which had been employed. I think this act of 1842 meant to provide for that class of cases in which goods were imported, in respect to which in no terms of enumeration could there be found a clause in the statute that was apt to describe them; that any such goods should be classed with those to which they bore similitude in kind, quality, and use, and that, therefore, when Congress adopted a designation, distinct and explicit, which embraced a particular article, then this section in the act of 1842 had no application to it; so that I am not able to adopt the views of the counsel for the government in this case. I, therefore, dispose of the case upon my view of the construction of the act under which the duty was imposed.

That provides that, on and after the day and year aforesaid, in lieu of duties heretofore imposed by law on the articles hereinafter mentioned, there shall be levied, collected, and paid on the goods, wares, and merchandise enumerated and provided for in this section, imported from foreign countries, the following duties and rates of duties; that is to say, among other things, upon silk vestings, pongees, shawls, scarfs, handkerchiefs, and various other things. Now, if, upon the evidence, silk ties are not included in that enumeration of shawls, scarfs, mantillas, handkerchiefs, veils, and laces, then ties are not among the articles in that part of the section mentioned, and I do not understand the counsel for the government to insist that they are.

"Then follows: ' *On all manufactures of which silk is the component material of chief value, not otherwise provided for,* 50 *per cent.*'

"Now, had this statute of July 30th, 1864, been a statute which purported to cover the whole subject—if it purported to be an entire revision of the whole law relating to duties on imports, and had, either by express words or by implication, repealed previously existing laws, there would have been no room to doubt that ' not otherwise provided for', meant not otherwise provided for in this act. Counsel for the government insists that the intention to give those words that construction is apparent on reading the entire section. I am not satisfied that that is so. The act is specific. In most or all of its provisions it appears to have been a taking up of the tariff laws, and on a review of them, a selecting in various classes the articles which are here enumerated or embraced, and anew defining the duties upon them, and the language 'any manufacture of silk, or of which silk is a component material of chief value, not otherwise provided for,' in my judgment means not otherwise provided for in this or any other act.

"Entertaining that view of the construction of the statute, if these goods are not ready-made clothing, and that is not strenuously insisted upon, and if they are not scarfs, then, for the purpose of this trial, I must say that the plaintiff is entitled to recover the amount which he claims."

To which charge defendant's counsel excepted, and verdict and judgment having been given for the plaintiff, the collector brought the case here.

*Mr. S. T. Phillips, Solicitor-General, for the plaintiff in error;
Mr. Edward Hartley, contra.*

Mr. Justice SWAYNE delivered the opinion of the court.

A thing may be within the letter of a statute and not within its meaning, and within its meaning, though not within its letter.* The intention of the lawmaker is the law.

Revenue laws are to be construed liberally to carry out the purposes of their enactment. Their penal provisions are not penal in the sense that requires a rigidly strict construction.† Where doubt exists as to the meaning of a statute, the title may be looked to for aid in its construction.‡ The pre-existing law, and the reason and purpose of the new enactment are also considerations of great weight.§

Upon the trial of this case the learned circuit judge held that silk neck-ties were within the last clause of the eighth section of the act of July 30th, 1864, unless the words "*not otherwise provided for*" excluded them from it, and brought them within the acts of 1861 and 1862. Such he instructed the jury was the effect of this negation.

In his view, those words referred not to the preceding part of the section in which they are found, but to the prior acts specified.

We agree with him as to the comprehensive character of the previous part of the sentence, if unqualified, but we dissent from his second proposition. To the latter, we think there is a conclusive answer.

The object of the statute was to increase the duties before imposed upon the things which it embraces. The title and the context alike show this. The preceding part of the sec-

---

* People v. The Utica Insurance Co., 15 Johnson, 380; Atkins v. The Fibre Disintegrating Co., 18 Wallace, 301; Bacon's Abridgment, title Statutes, 1, 2, 3, 5.

† Taylor v. The United States, 3 Howard, 197; Cliquot's Champagne, 3 Wallace, 115.

‡ United States v. Fisher, 2 Cranch, 386; United States v. Palmer, 3 Wheaton, 631.

§ Heyden's Case, 3 Reports, 77 b.; 1 Blackstone's Commentaries, 61; Sedgwick on Statutory and Constitutional Law, 1st edition, 237.

tion contains a very full enumeration of articles of silk, both manufactured and unmanufactured. It was evidently intended to be exhaustive. The last clause seems to have been added, as it is not unusual in such cases, out of abundant caution, that nothing might escape. Hence, the phrase "not otherwise provided for," was interposed, and meant to apply, not to preceding acts which may not have been present to the mind of the draftsman, and to which there was no necessity to recur, but to the preceding enumeration in the same section—which it supplemented.

The section, thus construing this clause, covers the whole subject of silk, in all its variety of forms. It was complete in itself. There was no need to refer generally or specially to any prior act. If there was conflict, the prior legislation yielded, necessarily, *ipso facto* to the later.

All the manufactured articles enumerated in this section of the act of 1864 were subjected to a duty of 60 per cent.

The duty imposed by the acts of 1861 and 1862 is 35 per cent.

Why leave the non-enumerated articles, covered by the act of 1864, subject only to this lower rate of duty? Why this distinction? Such a result would, we think, be a solecism, and contrary to the spirit and purpose of the act. It cannot reasonably be supposed that such was the intent of the clause in question.

This view of the subject fixes the duty upon silk neck-ties at 50 per cent. *ad valorem.*

If we had not come to this conclusion, we should hold that the case is controlled by the twentieth section of the act of 1842. The provisions of that section first appeared in the second section of the act of September 11th, 1841.* They were re-enacted in the act of 1842, and were a permanent part of the customs duty system of the country. They were unaffected by any of the later tariff acts, and were in force when the duty in question was collected.† Under that section, as applied to the act of 1864, the rate of duty would be

---

* 5 Stat. at Large, 463.       † Stuart et al. *v.* Maxwell, 16 Howard, 150.

60 per cent. instead of 50. But, as we hold that the clause we have considered, of the eighth section of the act of 1864, applies, it excludes the operation of the earlier statute.

The construction we have indicated of these statutes, is that given to them in their practical administration by the Treasury Department ever since their enactment. This, though not controlling, is not without weight, and is entitled to respectful consideration.*

Our views as to the amount of duty chargeable on the neck-ties in question are corroborated by the following further considerations:

In the Revised Code of the United States, of June 22d, 1874,† the similitude clause of the act of 1842, and the eighth section of the act of 1864, are reproduced without change. The provision as to "articles worn by men," &c., is also reproduced, but as follows:

"Articles worn by men, women, or children, of whatever material composed, *except silk and linen,* made up or made wholly or in part by hand, not otherwise provided for, 35 *per cent. ad valorem.*"‡

The exceptions mentioned were here for the first time expressly interposed, but it was a legislative declaration that such was the state of the law on the 1st of December, 1873, without the exceptions; and it is necessarily a construction of the last clause of the eighth section of the act of 1864, in accordance with that which we have given to it. It was the declared purpose of Congress to collate all the statutes as they were at that date, and not to make any change in their provisions. Obviously these exceptions were intended to remove doubts and misconstruction, which were known to have prevailed to some extent.

The question whether these neck-ties were either "scarfs" or "ready-made clothing," was submitted to the jury, and

---

* Edwards *v.* Darby, 12 Wheaton, 206; United States *v.* Dickson, 15 Peters, 141; United States *v.* Gilmore, 8 Wallace, 330.

† Title 33, Treasury Compilation, pp. 233, 245.

‡ Treasury Compilation, schedule M, p. 251.

they must have found the negative as to both. We have proceeded upon the assumption that this finding was correct. We have no power to review it in this proceeding.

Judgment reversed, and the cause remanded to the Circuit Court with directions to award a *venire de novo*, and proceed In conformity to this opinion.