OPINION.
Davis, J.,
delivered the opinion of the court:
In the second section of the Act to regulate the pay of the Navy of the United States, approved March 3,1835 (4 Stat. L., 757), it was enacted that the yearly allowance provided in the act should be all the pay, compensation, and allowance that should be received, under any circumstances whatever, by any officer or person in the naval service of the United States, except for traveling expenses when under orders, for which ten cents per mile shall be allowed.
By the fourth section of the Act of April 17,1866 (14 Stat. L., 38), Congress repealed so much of the second section of the act of 1835 as prohibited allowances to naval officers for rent of quarters, or for furniture, or for lights, or for fuel, or for transporting baggage.
By the third, fifth, and seventh sections of the Act of July 15, 1870, Congress established rates of pay for officers of all *91 ranks and grades in the Navy, and by tbe fourtli section of that act (16 Stat. L., 332) repealed all laws authorizing additional allowances, except those allowing rations and traveling expenses to officers, and further enacted that their traveling expenses in foreign countries should be construed to include such expenses of transportation of baggage as were necessarily incurred, but that no charge for transportation of baggage in connection with travel in the United States should be allowed.
This was the state of the statute law at the time when the travel took place which forms the subject of this suit. The claimant went to San Francisco via Panama, by order of the Department. The Act of 1835 commanded the accounting officers of the Treasury to allow him 10 cents a mile for that travel. The Act of 1866 authorized a further allowance for transportation of baggage in case extra expense was incurred on that account. The Act of 1870 confined that authority to make such allowance for baggage transportation to travel not within the United States. But as noclaim is made for transportation of baggage, this modification of the Act of 1835 is unimportant. If the case is to rest upon the legislation of Congress, there is no room for doubt as to the rights of the claimant.
The Attorney-General, however, suggests that we should set aside the legislation of Congress and decide this case on a construction of the law by the Executive Department, which he asks us to find, and we have substantially found, was for over forty years in conflict with the statute as construed by the court. He would have us assume that Congress must have known of the departmental annulling of the legislative will, and decide in substance that because the act of 1835 was not re-enacted by Congress as a renewed expression of legislative will, it must be regarded as repealed by departmental regulation.
We cannot give such force to executive construction; 'and even if we were disposed to do so, we should be restrained by an expression of the opinion of the Supreme Court on the exact point raised by the Government, which binds us, whatever force it may be supposed to have at the accounting offices of the Treasury.
In the Army appropriation Act of June 16, 1874 (18 Stat. L., 72, and Supplement to Eev. Stat., 37), a provision was inserted that only actual traveling expenses should be allowed to any *92 person bolding employment or appointment under tbe United States, and all allowances for mileages and transportation in excess of tbe amount actually paid were thereby declared illegal. Although contained in an army bill, this sweeping provision operated as general legislation affecting tbe Navy as well as tbe Army.
As if to correct this inadvertent legislation, Congress, by tbe naval appropriation Aet of June 30,1876, chap. 159 (19 Stat. L., 65, and 1 Suppl. Eev. Stat., 218), enacted that—
So much of the act of June sixteenth, one thousand eight hundred and seventy-four, making appropriations for the support of the Army for the fiscal year ending June thirtieth, one thousand eight hundred and seventy-five, and for other purposes, as provides that only actual traveling expenses shall he allowed to any person holding employment or appointment under the United States while engaged on public business, as is ap>plioahle to officers of the Navy while so engaged, is hereby repealed, and the sum of eight cents per mile shall be allowed such officers while so engaged in lieu of their actual expenses.
In 1878, Commodore Temple, by orders of tbe Navy Department, traveled from New York to Montevideo and back. The accounting officers allowed him bis traveling expenses, which were less than eight cents per mile. He demanded tbe statutory pay of eight cents per mile, and on refusal brought suit in this court. We gave judgment in bis favor. (14 C. Cls. R., 377.) Tbe Government appealed, and tbe Supreme Court unanimously affirmed tbe judgment in this court. (Temple’s Case, 105 U. S. R., 97.) In tbe opinion tbe court expresses its views upon tbe Act of 1835, and upon tbe conduct of tbe accounting officer's in construing it. Tbe court say:
The law as it stood wheu the travel was performed was explicit, and is not open to construction. ** * When this travel was performed there was not a line on the statute books of the United States which made any provision whatever, under any circumstances, for allowing officers of the Navy, when engaged on the imblie business, their actual expenses of travel. The only law ever enacted which made such provision had been expressly repealed by the act on which the appellee based his claim for mileage. This act declared him entitled, without condition or limitation, to mileage at the rate of eight cents per mile, and is the only law on the subject. * * The attempt to justify the decision of the accounting officers of the Treasury is based on an alleged practice in conformity therewith which it is said grew up in the Navy Department under the Act of 1835. The practice, if such there was, finds no higher warrant or sanction in the Act of 1835 than in the Act of 1876. * * The law on which the appellee bases his claim is *93 plain and unambiguous. We must givo it its natural and obvious meaning, and thus interpreted it leaves the'appellant no ground to stand on.
Note. — In two other cases, involving substantially a similar state of facts, those of Walton Goodioin and William D. Toy v. The United States, judgment was rendered for the claimants for the amount of their respective claims. No opinions were given, as the foregoing opinion in Graham’s Case covered the whole ground.
In tbe appeal of tbe Swift, Courtney & Beecher Company’s Case, reported in tbe same volume (105 U. S. R., 691), tbe Supreme Court say:
Tbe rule which gives determining weight to cotemporaneous construction put upon a statute, by those charged with its execution, applies only in oases of ambiguity and doubt. (Edwards’s Lessee v. Darby, 12 Wheat., 206; Smythe v. Fiske, 23 Wall., 374; United States v. Moore, 95 U. S. R., 760; United Stales v. Pugh, 99 ibid., 265.)
Tbe Supreme Court bas said of a law parallel in every respect with that which we have now to construe, that it is plain and unambiguous, and leaves tbe Government resisting it no ground to stand on. This emphatic language leaves no possible excuse for resorting to contemporaneous executive construction.
Judgment will be entered in tbe claimant’s favor for four hundred and sixty-three dollars and forty cents.