### UNITED STATES v. BEASLY.

(First Division. Juneau. May 17, 1903.)

No. 463B.

GRAND JURY—POWERS—INDICTMENTS—VENUE OF CRIME.

The territory of Alaska is divided into three judicial districts. Congress has provided a district court for each district. Each court has power to call grand juries to inquire into and return indictments for crime. *Held*, that the grand jury of one district has no jurisdiction to return indictments against persons accused of committing crimes in another district.

[Ed. Note.—For cases in point, see vol. 24, Cent. Dig. Grand Jury, § 63.]

J. C. Beasly was indicted by a grand jury of the Second Division of the District of Alaska at Nome in 1903. Four separate indictments were returned by said grand jury against Beasly, and a change of venue was taken from said Second Division to the First Division and to the court thereof being held in Juneau. During the May, 1904, term of this court, a grand jury was duly impaneled, sworn, and charged, and while the said grand jury was in session the witnesses of the government who testified at Nome, or at least some of them, being present, they were taken before the grand jury of this court, and an indictment was returned into this court against the said Beasly, which indictment conformed generally to the law as to the matters therein charged.

J. J. Boyce, Dist. Atty., for plaintiff.

W. E. Crews and James E. Fenton, for defendant.

BROWN, District Judge. A motion to dismiss the indictment brought by the grand jury of this court was made, on the ground, practically, that the grand jury of the First Division of the District of Alaska was without jurisdiction or authority to inquire into offenses alleged to have been committed in the Second Division, at Nome or St. Michaels, in said division. This court is therefore called upon to pass upon the question as to whether a grand jury called for a term of court in one division of the district of Alaska has any jurisdiction or authority in law to inquire into offenses and return indictments against persons committing offenses in either of the other divisions of the district.

On March 3, 1899, the Congress of the United States passed a Criminal Code, so-called, for the district of Alaska. The act defines crimes and misdemeanors generally, and also furnishes a Code of Criminal Procedure for the trial and punishment of offenders. Among other provisions of the Code of Criminal Procedure is section 10, which provides:

"That grand juries to inquire of the crimes designated in title one of this act, committed or triable within said district, shall be selected and summoned, and their proceedings shall be conducted in the manner prescribed by the laws of the United States with respect to grand juries of the United States district and circuit courts; the meaning and intent of this section being that but one grand jury shall be summoned in each division of the court to inquire into all offenses committed or triable within said district as well as those that are designated in title one of this act, as those that are defined in other laws of the United States."

It will be remembered that at the time of the passage of this criminal procedure act there were no divisions in the district of Alaska. There was one district and one district court. But at the time the said act was pending before the Congress of the United States a Political Code had been introduced in Congress, and this Code provided that there should be a district court for the district of Alaska, and that the district should be divided into three divisions, and a judge should be appointed for each of such divisions. Section 10 was therefore drawn in harmony with the anticipated legislation as to the divisions of the said district; hence the reference in this section "that but one grand jury shall be summoned in each division of the court."

It may be well to mention in this connection that the district court for Alaska had jurisdiction not only of offenses created and defined by the said act of Congress providing a Criminal Code for the district, but of such offenses as may be committed in said district in violation of the criminal laws of the United States; and the construction necessarily given to this section as to one grand jury is that but one grand jury shall be called to investigate those offenses described in title 1 of said act, as well as those which are defined in the other laws of the United States. This provision of the statute was intended to harmonize the jurisdictions of the Alaska courts, inasmuch as these courts have general jurisdiction of district and circuit courts of the United States and of all offenses that

might be committed against the general laws of the United' States. In the various territories it had been the custom—and indeed we may say it was required by the several territorial organic acts—that the same grand jury that sat to investigate offenses against the laws of the territory could not investigate offenses committed against the general criminal statutes of the United States, and so in these territorial jurisdictions two grand juries had been commonly required. It was to avoid this necessity that section 10 provided for a single grand jury.

The next section of our statute which bears upon the question now being considered is section 13, p. 2, Act 1899, which reads as follows:

"That the grand juries have power and it is their duty to inquire into all crimes committed or triable within the jurisdiction of the court and present them to the court either by presentment or indictment, as provided by this act."

Sections 21, 22, and 23 of the act of 1899 may also be considered in connection with the matter now before the court.

On the 6th of June, 1900, the legislation contemplated by the act of 1899 became law, and at that time the Congress of the United States enacted a Political Code and a Code of Civil Procedure for the district. The Political Code provides that the territory ceded by Russia under the treaty of March 30, 1867, and known as Alaska, shall constitute a civil and judicial district, the government of which shall be organized and administered as thereinafter provided. Section 4 of the Political Code provides as follows:

"There is hereby established a district court for the district, which shall be a court of general jurisdiction in civil, criminal, equity and admiralty causes, and three district judges shall be appointed for the district who shall, during their terms of office, reside in the division of the district to which they may respectively be assigned by the President. The court shall consist of three divisions. The judge designated to preside over division one shall during the term of his office reside at Juneau," etc.

Section 5 provides:

"The jurisdiction of each division of the court shall extend over the district of Alaska, but the court in which the action is pending may, on motion, change the place of trial in any action, civil or criminal, from one place to another place in the same division, or to a designated place in another division, in either of the following cases: * * *

"(4) By the court on its own motion when, considering available means of travel, it appears that the defendant will be put to unnecessary expense and inconvenience if summoned to defend in the place or division in which the action has been commenced. * * * In any criminal prosecution the court shall change the place of trial where it appears to the satisfaction of the court that the defendant will not be prejudiced thereby, and that the United States will be put to unnecessary expense in such criminal prosecution if the transfer is not made."

By this act a clerk of court is provided for each division, who shall reside during their respective terms of office at the place designated as the residence of the judge of the division of the court to which each of the judges of the district court shall be assigned. Section 9 provides for the appointment of a United States marshal for each division of the district, and the act also provides for the appointment of a district attorney for each division, the residence of the marshal and district attorney of each division to follow the residence of the judge of the division as designated by the President. It would seem from the act that the marshal and district attorney may perform their duties only within the exterior limits. or boundaries of the division to which appointed, and their authority goes no further than this.

Under the letter of the statutes of the district, nothing apparently can be found to circumscribe the jurisdiction of either of the divisions of the district court. "The jurisdiction of each division of the court shall extend over the district of Alaska." It will further be noted that by the terms of section 13 of the Code of Criminal Procedure, the following declaration is very positive in its terms:

2 A.R.—7

"That the grand juries have power, and it is their duty, to inquire into all crimes committed or triable within the jurisdiction of the court, and present them to the court either by presentment or indictment."

If the jurisdiction of each division of the court shall extend over the district of Alaska, it is argued with great force, and the conclusion seems upon the face of the statute almost inevitable, that the power of the grand jury to inquire is as broad as the jurisdiction of the court.

And because of these several provisions of the statute, it becomes necessary to construe these, and to reach some general conclusion as to what is meant by the Congress of the United States in their enactment. What was the intention of Congress as to the power of a grand jury to investigate offenses outside of the division of the district within which such grand jury is called?

In considering a question of this character, it is well to review the origin of grand juries and the methods by which they were secured, and in that connection the limitations placed upon their investigations. The methods of obtaining both grand and petit juries in the early history of jury trials was much the same as now, and "according to the policy of the ancient law," says Blackstone, "the jury was to come de vicinete from the neighborhood of the ville or the place where the cause of action was laid in the declaration, and therefore some of the jury were obliged to be returned from the one hundred in which the ville lay, and if none were returned the array might be challenged 'for defects of the hundreds.' The Gothic jury or nembda was also collected out of every quarter of the country, for living in the neighborhood they were properly the very country or pais to which both parties had appealed, and were supposed to know beforehand the character of the parties and witnesses, and therefore they better knew what credit to give to the facts alleged in evidence." Cooley's Black. (3d Ed.) vol. 2, p. 359.

Under the various changes and mutations of the law of England, a grand jury, whose duty it was to present indictments, came from the county instead of from the ville, which was, perhaps, a smaller portion of the country.

"To this end, the sheriff of every county is bound to return to every session of the peace and every commission of oyer and terminer and of general gaol delivery twenty-four good and lawful men of the county, some out of every hundred, to inquire, present, do, and execute all things which on the part of our Lord the King shall then and there be commanded them." (Id. 301.)

It was also apparently fixed by law as to the number that should be summoned to serve upon a grand jury. "As many as appear upon this panel are sworn upon the grand jury to the amount of twelve at the least and not more than twenty-three, that twelve may be a majority." Blackstone further tells us that the jury so formed we find exactly described as early as the laws of King Ethelreid. During the reign of King Richard I the process of selecting grand juries was somewhat changed. Four knights were taken from the county at large, who chose two or more out of every hundred. Again, at this early day, the grand jury was sworn to inquire only for the body of the county, and therefore could not inquire of a fact done out of that county for which they were sworn, unless particularly enabled so to do by an act of Parliament. (Id. 302.)

The manner of selecting grand juries in all the states of the Union, as well as in the territories, has been much the same as the ancient method described in Blackstone. Under the laws of the United States, juries may be called according to the practice in state courts, and according to such rules as are established for the district and circuit courts of the United States. Section 808 of chapter 15 of the judiciary act (Rev. St. U. S. [U. S. Comp. St. 1901, p. 626]), fixes the number of grand jurors at not less than 16 nor more than 23 persons.

If less than 16 of those summoned attend the court, the court shall order the marshal to summon, either immediately or at a day fixed, from the body of the district, and not from bystanders, a sufficient number of persons to complete the grand jury; indicating that the jurors shall come from the body of the district. Again, it is provided in section 812 of the same act: "No person shall be summoned as a juror in any district or circuit court more than once in two years," and if a juror is called who has so served, it is ground for challenge.

Section 802 provides:

"The jurors shall be returned from such parts of the district from time to time as the court may direct, so as to be most favorable to an impartial trial and so as not to incur an unnecessary expense or unduly to burden the citizens of any part of the district with such services."

Under the United States statutes a grand jury may be called for both the district and circuit courts to serve for each. But in the state of New York we find more than one district, and yet the circuit court which includes New York has jurisdiction, not only as broad as the entire state, but covering other states as well. In the Ninth Circuit we find California, Washington, Oregon, Montana, Idaho, and Nevada included in the circuit, and each state constitutes a district. Of course, in the state of New York the jurisdiction of the circuit court is not restricted to the southern or northern districts of the state, but covers both; yet it is said that the power of the grand jury is co-extensive with and limited by the criminal jurisdiction of the court of which they are a constituent part. Where they transcend such powers, they are null.

Chief Justice Marshall in United States v. Hill, Fed. Cas. No. 15,364, said:

"Grand juries are accessories to the criminal jurisdiction of the court, and they have power to act and are bound to act so far as they can aid the jurisdiction. Thus far the power is implied, and is as legitimate as if expressly given."

As before stated, under the statutes of the United States, a grand jury sworn and impaneled in any district court may take cognizance of all crimes and offenses within the jurisdiction of the circuit court for said district as well as of the district court.

It will be seen that the language referred to limits the powers of the grand jury to the body of the district for which it is called, and, though it is called to serve the circuit court, it has a broader jurisdiction than the district; it can only act in behalf of the district court and in aid of its jurisdiction within the district for which the jury is called.

Referring again to our statutes and the conditions which exist in the district of Alaska: With three divisions of the district court, having each a grand jury, and each possibly in session at the same time, can it be supposed that it was intended by Congress that these several grand juries might investigate into offenses committed in all parts of the district, whether within the limits of the division for which called or within other divisions of the district? I take it that such a view would result in interminable difficulty in the administration of our criminal statutes. A grand jury in the first division of the district might proceed to indict men in the second or third divisions, the grand juries in the second and third divisions might indict men for offenses committed in the other divisions, thus doubling up indictments, and causing endless complications in the attempted administration of the laws, and constant friction between the several divisions of the court in the exercise of their jurisdictions. As before stated, the United States attorneys and marshals are appointed for their respective divisions only, and their authority and power is limited to the exterior boundaries of the division to which they are appointed. The marshals cannot serve process outside of their respective divisions, and the United States attorneys have no authority to act upon matters outside of the division to

which they are appointed. Their entire duties are restricted to the special division of the district to which appointed. Section 13 of our Code of Criminal Procedure provides that "the grand juries have power and it is their duty to inquire into all crimes committed or triable within the jurisdiction of the court, and present them to the court either by presentment or indictment as provided in this act;" but this, it is believed, does not mean that the jurisdiction and authority of the grand jury is as broad as the jurisdiction of the district court as fixed and determined by section 5 of the Political Code, by which the jurisdiction of each division of the court is made to extend over the entire district. Grand juries are selected and summoned and their proceedings conducted in the manner prescribed by the laws of the United States with respect to grand juries of district and circuit courts of the United States; and while it is generally true that the jurisdiction of the grand jury is as broad as the jurisdiction of the court, we must construe this to mean the jurisdiction of the court then in session. Several terms of court are required to be held in the First Division of the District of Alaska each year at different places. We have no county and no legal subdivision fixed and determined by law within the limits within which courts shall be held and juries be called. It is believed, however, that the intention of Congress in providing that the grand juries have power and it is their duty to inquire into all crimes committed or triable within the jurisdiction of the court was to limit the proceedings to the peculiar jurisdiction of the term of court then in session, and we believe it was further within the meaning of this legislation by Congress that the various grand juries in the different divisions of the district should have power to inquire into crimes committed within the limits of such division, and that their duties should stop there. The spirit and intent of all jury laws from the adoption of the Great Charter of British Rights down to the present time in all parts of the United

States has been to bring the jurors from the various sections of the county or district over which they may have jurisdiction. To hold that a jury called for a single division of the district of Alaska may investigate offenses and bring indictments against offenders in other divisions of the district is to reverse the whole order and theory of jury law throughout the history of the system. While it may be there is nothing in the letter of our statute to prevent a grand jury in one division of the district from inquiring into offenses committed in another division, it is believed the whole grand jury system is averse to such a proceeding.

But, in trying to reach and determine the intent of the Legislature in passing these statutes, it is believed we should not be confined to the letter of the statute. As was well said by Mr. Justice Swayne in Smythe v. Fiske, 23 Wall. 374, 380. 23 L. Ed. 47, "a thing may be within the letter of a statute. and not within its meaning, and within its meaning, though not within its letter. The intention of the lawmaker is the law." A like expression is found in the opinion of Mr. Chief Justice Thompson of the Supreme Court of the state of New York in People v. Utica Ins. Co., 15 Johns. (N. Y.) 358, 8 Am. Dec. 243:

"A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers."

Considering the conditions as they exist in Alaska, the great distance between different portions of the district, such, for example, as in this case from Juneau to Nome, which by any route or means of travel is from 2,000 to 3,000 miles, we can hardly conceive it possible that the Congress of the United States, understanding these conditions, even for a moment contemplated that a grand jury sitting at Juneau should inquire of offenses alleged to have been committed at Nome, or in that

vicinity. It is believed that the intent of Congress, whatever may be said of the jurisdiction of the different courts of the district, was to limit the actions of the grand jury in each of the divisions to an investigation of offenses committed against the laws of the United States and of the district to the extent of the exterior boundaries of each division, and not otherwise. Holding this to be the purpose and intent of Congress in making the laws as they now exist, following out the suggestion of the learned Judge Swayne, the law is, then, that grand juries shall act within the limits of the division of the district where called, and not otherwise, and that they have no jurisdiction to inquire of offenses alleged to have been committed against the laws of the United States or of the district occurring beyond the exterior boundaries of the division where called.

By reason of this theory of the law, the motion of the defendant to dismiss the present indictment, on the ground that the grand jury was without jurisdiction to inquire of the offense alleged to have been committed at or near Nome in the second division, must be sustained, and it is so ordered.