O’NIELL, O. J.
 

 (dissenting).
 

 The temporary injunction which was granted in this case, and from the granting of which the defendant has appealed, merely forbids the sheriff to advertise ,or sell the property at the risk and for the account of Mrs. Victor J. Passera, the plaintiff in the injunction suit, under the provisions of Act 316 of 1908. I concede that Mrs. Passera cannot compel the defendant, Pontchartrain Realty Company, to perfect the title to the property; if in fact it is .not perfect, or contains less area than the property advertised and offered for sale. But the writ of injunction merely forbids the sheriff to advertise or sell the property at Mrs. Passera’s risk and for her account until it can be determined by a' judicial decree whether her complaint is well founded. It is conceded in the prevailing opinion in this case tjiat, if Mrs. Passera’s complaint is well founded, the reselling of the property will not be, and cannot be, at her risk or for her account, notwithstanding the language of the statute. Then why should the sheriff be allowed to advertise the property for sale at the risk and for the account of Mrs. Passera? Why not let it be determined in this injunction suit whether Mrs. Passera’s complaint is or is not well founded? Why leave the question to be determined in another lawsuit between the same parties? In fact, there will be perhaps a third lawsuit if the property is adjudicated to some one else, who may make the same complaint that Mrs. Passera is making in this ease.
 

 It is said in the prevailing opinion in this case that Mrs. Passera will not be deprived of any right if the property is reoffered for sale at her risk and for her account, and if it is sold to some one else at a price less than Mrs. Passera has already bid, and if it is eventually determined that the complaint which she is making in this case was well founded. But that is not correct, because, if Mrs. Passera’s complaint is well founded, she is entitled to have that fact judicially determined now, so as to be relieved of having the property resold at her risk and for her account, under the provisions of section 3 of Act 316 of 1908. On the other hand, if Mrs. Passera’s complaint; is not well founded, and if the property must be resold at her risk and for her account, she ought to have the privilege — which any subsequent
 
 *252
 
 bidder will have — of taking the title, notwithstanding her complaint.
 

 I respectfully submit that there is a serious inconsistency in the prevailing opinion in this case. It is said, first, that the statute must be so literally construed that the property must be resold at the risk and for the account of Mrs. P'assera, notwithstanding her objection to the title may be well founded; and then it is said that, if, after the second sale, it is ascertained that Mrs. Passera’s complaint was well founded, the second sale will not have been at her risk or for her account.
 

 I submit that section 3 of Act 316 of 1908 is entitled to a reasonable construction. When it says that, unless the price be paid within thirty days, i;he property shall be resold at the risk and for the account of the bidder, it means unless the bidder pays for what he bought. It does not mean that a bidder must,, under penalty of having the property resold at his risk and for his account, pay for and take whatever property the sheriff tenders him, regardless of any defect of title or deficiency in quantity of the property offered for sale.
 

 Mr. Justice Brown, for the Supreme Court of the United States, struck the keynote, in Hawaii v. Mankichi, 190 U. S. 212, 23 S. Ct. 787, 788, 47 L. Ed. 1020, when he said that the books were full of decisions to the effect that the intention of the lawmaking power should prevail against the letter of the statute. Here is what was said in that case:
 

 “But there is another question underlying this and all other rules for the interpretation of statutes, and that is, What was the intention of the legislative body? Without going back to the famous ease of the drawing of blood in the streets of Bologna, the books are full of authorities to the effect that the intention of the law-making power will prevail, even against the letter of the statute; or, as tersely expressed by Mr. Justice Swayne in Smyth v. Fiske, 23 Wall. 374, 380, 23 L. Ed. 47, 49: ‘A thing may be within the letter of a statute and not within its meaning, and within its meaning, though not within its letter. The intention of the lawmaker is the law.’ A parallel expression is found, in the opinion of Mr. Chief Justice Thompson of the supreme court of the state of New Tork (subsequently Mr. Justice Thompson of this court), in People v. Utica Ins. Co., 15 Johns, 358, 381, 8 Am. Dec. 243: ‘A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute is not within the statute, unless it be within the intention of the makers.’
 

 “Without going farther, numerous illustrations of this maxim are found in the reports of our own court. Nowhere is the doctrine more broadly stated than in United States v. Kirby, 7 Wall. 482, 19 L. Ed. 278, in which an act of Congress, providing that if ‘any person shall knowingly and wilfully obstruct or retard the passage of the mail, or of any driver or carrier,’ was held not to apply to a state officer who held a warrant of arrest against a carrier for murder, the court observing that no officer of the United States was placed by his position above responsibility to the legal tribunals of the country, and to the ordinary processes for his arrest and detention when accused of felony. ‘All laws,’ said the court, ‘should receive a sensible construction^ General terms should •be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid
 
 *254
 
 results of this character. The reason of the law in such cases should prevail over its letter.’ A case was cited from Plowden, holding that; a statute which punished a prisoner as a felon who broke prison did not extend to a prisoner who broke out when the prison was on fire, ‘for he is not to be hanged because he would not stay to be burned.’ Similar language to that in Kirby’s Case was used in Carlisle v. United States, 16 Wall. 147, 153, 21 L. Ed. 426, 429.
 

 “In Atkins v. Fibre Disintegrating Co., 18 Wall. 272, 21 L. Ed. 841, it was held that a suit in personam in admiralty was not a ‘civil suit’ within the 11th section of the judiciary act, though clearly a civil suit in the general sense of that phrase, and as used in other sections of the same act. See also Re Louisville Underwriters, 134 U. S. 488, 10 S. Ct. 587, 33 L. Ed. 991. So in Heydenfeldt v. Daney Gold & Silver Min. Co., 93 U. S. 634, 638, 23 L. Ed. 995, 996, it was said by Mr. Justice Davis: ‘If a literal interpretation of any part of it (a statute) would operate unjustly, or lead to absurd results, or be contrary to the evident meaning of the act taken as a whole, it should be rejected. There is no better way of discovering its true meaning, when expressions in it; are rendered ambiguous by their connection with other clauses, than by considering the necessity for it, and the causes which induced its enactment.’ To the same effect; are the Church of Holy Trinity v. United States, 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226. * * *
 

 “Two recent English cases are instructive in this connection: In Plumstead Dist. Bd. of Works v. Spackman, L. R. 13 Q. B. Div. 878, 887, it was said’by the Master of Rolls, afterwards Lord Esher: ‘If there are no means of avoiding such an interpretation of the statute’ (as will amount to a great hardship), ‘a judge must come to the conclusion that the legislature by inadvertence has committed an act of legislative injustice; but, to my mind a judge ought to struggle with all the intellect that he has, and with all the vigor of mind that he has, against such an interpretation of an act of Parliament; and, unless he is forced to come to a contrary conclusion, he ought to assume that it is impossible that the legislature could have so intended.’ See also Ex parte Walton, L. R. 17 Ch. Div. 746.”
 

 For these reasons, I respectfully dissent from the prevailing opinion in this case.