JUANA ESTELA, como madre con patria potestad sobre su menor hijo ESTEBAN CAMILO ESTELA, demandante y apelante, *v.* SUCN. DE BENITO MEDRAÑO, compuesta de su universal heredero, BENITO MEDRAÑO, demandada y apelada.

No. 5528.—*Sometido:* Junio 19, 1931. *Resuelto:* Noviembre 29, 1932.

*V. M. Fernández,* abogado del apelante; *O'Neill & O'Neill,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

La corte de distrito sostuvo una excepción previa a la demanda en un pleito de filiación, y desestimó la acción. El demandante es un hijo natural póstumo. Su padre falleció en septiembre 28 de 1929. El demandante tenía ocho meses de edad cuando se radicó la demanda en agosto 2 de 1930. El padre y la madre vivían en concubinato al tiempo de la concepción y durante el embarazo de la madre hasta que ocurrió el fallecimiento del padre. No existía impedimento legal para el matrimonio. Otras alegaciones de la demanda son que desde el tiempo de la concepción el supuesto padre Benito Medraño se ocupó de la alimentación del actor; hizo los preparativos necesarios para el alumbramiento y dijo en sus conversaciones ser el padre del demandante; y que el demandante ha estado desde esa fecha en la posesión continua del estado civil de hijo natural.

Según los términos del artículo 119 del Código Civil Español, que estuvo en vigor en Puerto Rico hasta el año 1902, eran hijos naturales "los nacidos, fuera de matrimonio, de padres que al tiempo de la concepción de aquellos pudieron casarse sin dispensa o con ella." Esta definición fué omitida en la revisión de 1902, pero volvió a ser promulgada en 1911. Véanse leyes de ese año, pág. 247. Allí aparece como parte del artículo 193 del Código Civil. Véase también la Compilación de 1911, sección 3263. Vuelve a aparecer en una forma substancialmente igual como el artículo 125 de la edición de 1930.

Fuera de la obligación impuesta por ciertas disposiciones del Código Penal como parte de la penalidad prescrita para

determinados delitos, un pleito de filiación, cuando se incoaba en contra de un padre putativo o sus herederos, sólo era permitido, de acuerdo con el Código Civil Español (art. 135), en los casos siguientes:

"1. Cuando exista escrito suyo indubitado en que expresamente reconozca su paternidad.

"2. Cuando el hijo se halle en la posesión continua del estado de hijo natural del padre demandado, justificada por actos directos del mismo padre o de su familia."

A estos incisos, según quedaron enmendados por la revisión de 1902 (Código Revisado, Art. 189) se añadió el siguiente:

"3. Cuando la madre fué conocida viviendo en concubinato con el padre al tiempo del embarazo o nacimiento del hijo, o cuando éste haya nacido llevando sus padres relaciones amorosas."

En 1911 se agregó un cuarto inciso, como sigue:

"4. Cuando el hijo pueda presentar cualquier prueba auténtica de su paternidad."

Al mismo tiempo fueron eliminadas del inciso tercero las palabras "o cuando éste haya nacido llevando sus padres relaciones amorosas", y las palabras "durante el embarazo y al tiempo del nacimiento del hijo" se emplearon en vez de las palabras "durante el embarazo o nacimiento del hijo."

Evidentemente, el fin primordial de la enmienda fué eliminar la alusión a la existencia de relaciones amorosas al tiempo del nacimiento como bastantes, por sí solas, para sostener una sentencia a favor del demandante en un caso de filiación. Sin embargo, esa enmienda ofreció la oportunidad de mejorar la dicción de la cláusula anterior. Es por lo menos una cuestión debatible la de si la legislatura tuvo la intención de sustituir la disyuntiva "o" por la copulativa "y". Si a la versión castellana de la definición de hijos naturales, tal como volvió a ser adoptada al mismo tiempo y en el mismo artículo, hubiera seguido la fraseología del texto

inglés, hubiera quedado poco lugar a dudas sobre este extremo. Para los fines de esta opinión, sin embargo, no necesitamos sutilizar acerca de cuál de las dos debe prevalecer.

". . . Es regla familiar que una cosa puede estar dentro de la letra de un estatuto y sin embargo fuera del mismo, por no hallarse dentro de su espíritu ni de la intención del legislador." Holy Trinity Church v. United States, 143 U. S. 457.

Véanse también *Smith* v. *Fiske,* 23 Wall. 374, 380; y *Hawaii* v. *Mankichi,* 190 U. S. 197, 212.

Como los incisos anteriores, el inciso tercero del artículo 189, tanto según fué originalmente adoptado en 1902, como en la revisión de 1911 (Estatutos Compilados, sec. 3263) tiene que ver con la cuestión del reconocimiento. El primero de estos tres incisos comprende el caso de un reconocimiento previo expreso hecho constar por escrito. El segundo se refiere a otros actos de reconocimiento, ya directos o tácitos, como base para establecer un estado. Por virtud del tercero, tal como se promulgó originalmente y como quedó enmendado, el reconocimiento se infiere de la continuación de las relaciones existentes entre los padres al tiempo de la concepción. En otras palabras, al padre putativo se le da la ocasión de negar su paternidad y evitar cualquier presunción de reconocimiento rompiendo sus relaciones con la madre en cualquier fecha antes del nacimiento del hijo. Este privilegio de repudiación parece ser la explicación más plausible y satisfactoria de la enmienda, enfocada desde el ángulo de una supuesta intención de substituir la "o" por la "y". No fué la intención de la Legislatura disponer que el derecho de acción de un hijo natural reconocido debía suprimirse por la mera circunstancia de morir el padre poco antes de nacer el hijo. Un hijo póstumo, nacido dentro de tres meses o más después de la muerte del padre, de padres que al tiempo de la concepción y hasta el momento de la muerte del progenitor vivían en concubinato, tiene derecho a un decreto estableciendo su estado como un hijo natural reconocido.

*Debe revocarse la sentencia recurrida y devolverse el caso.*

*para ulteriores procedimientos no incompatibles con esta opinión.*

El Juez Asociado Señor Córdova Dávila no intervino.