UNITED STATES *v.* SEARS, ROEBUCK & CO. (No. 3558)[1]

United States Court of Customs and Patent Appeals, December 5, 1932

*Charles D. Lawrence*, Assistant Attorney General (*Ralph Folks*, special attorney, of counsel), for the United States.
*James R. Ryan* for appellee.

---

[1] T. D. 46086.

[Oral argument October 10, 1932, by Mr. Lawrence and Mr. Ryan]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal by the United States from a judgment of the United States Customs Court, holding certain poultry wire netting or fencing, galvanized before weaving, and certain fencing of the same character galvanized after weaving, imported at the port of Philadelphia, to be properly dutiable at 45 per centum ad valorem under the provisions of paragraph 397, Tariff Act of 1930, thus overruling the classification and assessment of duty of the merchandise by the collector at 50 per centum and 60 per centum ad valorem, respectively, under the provisions of said paragraph 397, as modified by a presidential proclamation dated February 5, 1931, T. D. 44605, purporting to be issued under and by authority of section 336 of said Tariff Act of 1930.

In the Tariff Act of 1930, as approved June 17, 1930, paragraph 397 reads as follows:

PAR. 397. Articles or wares not specially provided for, if composed wholly or in chief value of platinum, gold, or silver, and articles or wares plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 65 per centum ad valorem; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

The pertinent part of said proclamation of the President reads as follows:

Now, therefore, I, Herbert Hoover, President of the United States of America, do hereby approve and proclaim the following rates of duty found to be shown by said investigation to be necessary to equalize such differences in costs of production:

An increase in the rate of duty expressly fixed in paragraph 397 of Title I of said act on woven-wire fencing and woven-wire netting, all the foregoing composed of wire smaller than eight one-hundredths and not smaller than three one-hundredths of an inch in diameter, coated with zinc or other metal before weaving, from 45 per centum ad valorem to 50 per centum ad valorem;

And an increase in the rate of duty expressly fixed in paragraph 397 of Title I of said act on woven-wire fencing and woven-wire netting, all the foregoing composed of wire smaller than eight one-hundredths and not smaller than three one-hundredths of an inch in diameter, coated with zinc or other metal after weaving, from 45 per centum ad valorem to 60 per centum ad valorem.

In so far as pertinent to the questions here involved, said section 336 of the Tariff Act of 1930 reads as follows:

(a) CHANGE OF CLASSIFICATION OR DUTIES.—In order to put into force and effect the policy of Congress by this Act intended, the commission (1) upon request of the President, or (2) upon resolution of either or both Houses of Congress, or (3) upon its own motion, or (4) when in the judgment of the commission there is

good and sufficient reason therefor, upon application of any interested party, shall investigate the differences in the costs of production of any domestic article and of any like or similar foreign article. In the course of the investigation the commission shall hold hearings and give reasonable public notice thereof, and shall afford reasonable opportunity for parties interested to be present, to produce evidence, and to be heard at such hearings. The commission is authorized to adopt such reasonable procedure and rules and regulations as it deems necessary to execute its functions under this section. The commission shall report to the President the results of the investigation and its findings with respect to such differences in costs of production. If the commission finds it shown by the investigation that the duties expressly fixed by statute do not equalize the differences in the costs of production of the domestic article and the like or similar foreign article when produced in the principal competing country, the commission shall specify in its report such increases or decreases in rates of duty expressly fixed by statute (including any necessary change in classification) as it finds shown by the investigation to be necessary to equalize such differences. In no case shall the total increase or decrease of such rates of duty exceed 50 per centum of the rates expressly fixed by statute.

\* \* \* \* \* \* \*

(c) PROCLAMATION BY THE PRESIDENT.—The President shall by proclamation approve the rates of duty and changes in classification and in basis of value specified in any report of the commission under this section, if in his judgment such rates of duty and changes are shown by such investigation of the commission to be necessary to equalize such differences in costs of production.

\* \* \* \* \* \* \*

(e) ASCERTAINMENT OF DIFFERENCES IN COSTS OF PRODUCTION.—In ascertaining under this section the differences in costs of production, the commission shall take into consideration, in so far as it finds it practicable:

(1) IN THE CASE OF A DOMESTIC ARTICLE.—(A) The cost of production as hereinafter in this section defined; (B) transportation costs and other costs incident to delivery to the principal market or markets of the United States for the article; and (C) other relevant factors that constitute an advantage or disadvantage in competition.

(2) IN THE CASE OF A FOREIGN ARTICLE.—(A) The cost of production as hereinafter in this section defined, or, if the commission finds that such cost is not readily ascertainable, the commission may accept as evidence thereof, or as supplemental thereto, the weighted average of the invoice prices or values for a representative period and/or the average wholesale selling price for a representative period (which price shall be that at which the article is freely offered for sale to all purchasers in the principal market or markets of the principal competing country or countries in the ordinary course of trade and in the usual wholesale quantities in such market or markets); (B) transportation costs and other costs incident to delivery to the principal market or markets of the United States for the article; (C) other relevant factors that consitute an advantage or disadvantage in competition, including advantages granted to the foreign producers by a government, person, partnership, corporation, or association in a foreign country.

\* \* \* \* \* \* \*

(g) PROHIBITION AGAINST TRANSFERS FROM THE FREE LIST TO THE DUTIABLE LIST OR FROM THE DUTIABLE LIST TO THE FREE LIST.—Nothing in this section shall be construed to authorize a transfer of an article from the dutiable list to the free list or from the free list to the dutiable list, nor a change in form of duty. Whenever it is provided in any paragraph of Title I of this Act, or in any amenda-

tory Act, that the duty or duties shall not exceed a specified ad valorem rate upon the articles provided for in such paragraph, no rate determined under the provisions of this section upon such articles shall exceed the maximum ad valorem rate so specified.

(h) DEFINITIONS.—For the purpose of this section—

(1) The term "domestic article" means an article wholly or in part the growth or product of the United States; and the term "foreign article" means an article wholly or in part the growth or product of a foreign country.

(2) The term "United States" includes the several States and Territories and the District of Columbia.

(3) The term "foreign country" means any empire, country, dominion, colony, or protectorate, or any subdivision or subdivisions thereof (other than the United States and its possessions).

(4) The term "cost of production," when applied with respect to either a domestic article or a foreign article, includes, for a period which is representative of conditions in production of the article: (A) The price or cost of materials, labor costs, and other direct charges incurred in the production of the article and in the processes or methods employed in its production; (B) the usual general expenses, including charges for depreciation or depletion which are representative of the equipment and property employed in the production of the article and charges for rent or interest which are representative of the cost of obtaining capital or instruments of production; and (C) the cost of containers and coverings of whatever nature, and other costs, charges, and expenses incident to placing the article in condition packed ready for delivery.

Appellee duly filed a protest against said classification and assessment of duty by the collector, which protest reads as follows:

COLLECTOR OF CUSTOMS, *Philadelphia, Pa.*

SIR: We respectfully protest against your liquidation of the entry below described and your assessment of duty at the rate of 50 per centum ad valorem on wire fencing, galvanized before weaving; and 60 per centum ad valorem on wire fencing, galvanized after weaving, under paragraph 397, Tariff Act of 1930, pursuant to presidential proclamation issued February 5, 1931 (T D. 44605).

These goods were imported Ex. S. S. *Hannover* into the port of Philadelphia, Pa., on the 15th day of April, 1931, and entered for consumption on the 15th day of April, 1931, entry No. 11335, liquidated July 25, 1931.

We claim this merchandise to be dutiable at one-half of 1 cent per pound under paragraph 317, Tariff Act of 1930. It is alternatively claimed that the merchandise is dutiable at 25 per centum and 40 per centum under paragraph 318, Tariff Act of 1930, or at 45 per centum under paragraph 397, Tariff Act of 1930.

It is further claimed that, in issuing the proclamation (T. D. 44605), the President exceeded the authority vested in him by virtue of section 336, Title III, Art. II, Tariff Act of 1930.

That section 336, *supra*, does not confer upon the President the power and authority to rewrite all or any portion of the language of paragraph 397, *supra*, or any other paragraph of the Tariff Act of 1930.

Section 336, Tariff Act of 1930, is an unconstitutional delegation of legislative power to the President of the United States and is, for that reason, null and void *ab initio*.

We further claim the merchandise to be dutiable as claimed, directly or indirectly, under paragraph 1559, Tariff Act of 1930.

At the hearing in the court below counsel for appellee offered in evidence the appraiser's report, the invoices, and the collector's letter; these were admitted. No testimony was taken and the case was thereupon submitted. The lower court sustained the protest upon the ground, as we gather from its opinion, that the President exceeded the powers delegated to him in said section 336, or, if said section by its terms authorized the President to take the action stated in said proclamation, then said section 336 is unconstitutional and void.

Two questions are presented to us for determination, as follows:

1. Whether the provisions of section 336, *supra*, are violative of Article I, sections 1, 7, and 8 of the Constitution.

2. Whether the President, in the issuance of the proclamation, *supra*, exceeded the powers delegated to him by Congress.

So far as the question of the constitutionality of said section 336 is concerned, we would first observe that section 315 of the Tariff Act of 1922, which was the predecessor of said section 336 of the Tariff Act of 1930, has been found to be constitutional and valid. *Hampton, Jr., & Co.* v. *United States*, 14 Ct. Cust. Appls. 350, T. D. 42030, 276 U. S. 394; *United States* v. *Fox River Butter Co.*, 20 C. C. P. A. (Customs) 38, T. D. 45675 (certiorari denied, 287 U. S. 628); *United States* v. *Harry Blandamer*, 20 C. C. P. A. (Customs) 45, T. D. 45676 (certiorari denied, 287 U. S. 628); *United States* v. *S. Leon & Co.*, 20 C. C. P. A. (Customs) 49, T. D. 45677 (certiorari denied, 287 U. S. 628); *Foster & Co. (Inc.) et al.* v. *United States*, 20 C. C. P. A. (Customs) 15, T. D. 45673.

It is proper to observe that the decision of the lower court in the case at bar was made prior to our series of decisions, beginning with the *Fox River* case, *supra*, sustaining the validity of said section 315 of the Tariff Act of 1922.

Our inquiry, then, with respect to the constitutionality of said section 336 of the Tariff Act of 1930, is, first, whether it differs in any material respects, so far as this question is concerned, from said section 315 of the Tariff Act of 1922. Appellee contends that the cases above cited are not controlling upon the question of the constitutionality of said section 336 because there is new language contained in the section, not found in section 315 of the Tariff Act of 1922, which does not limit either the Tariff Commission or the President to a specific finding of facts upon which the legislative will shall be effected, but attempts to delegate a discretion to base differences in cost of production, when not otherwise readily ascertainable, either upon weighted invoice prices or values and/or wholesale selling prices for a representative period. The language referred to by appellee is found in subdivision (e) of said section 336 and reads as follows:

(e) Ascertainment of Differences in Costs of Production.—In ascertaining under this section the differences in costs of production, the commission shall take into consideration, in so far as it finds it practicable:

\*        \*        \*        \*        \*        \*        \*

(2) In the Case of a Foreign Article.—(A) The cost of production as hereinafter in this section defined, or, if the commission finds that such cost is not readily ascertainable, the commission may accept as evidence thereof, or as supplemental thereto, the weighted average of the invoice prices or values for a representative period and/or the average wholesale selling price for a representative period (which price shall be that at which the article is freely offered for sale to all purchasers in the principal market or markets of the principal competing country or countries in the ordinary course of trade and in the usual wholesale quantities in such market or markets);  \*   \*   \*.

Subdivision (c) of section 315 of the Tariff Act of 1922 reads as follows:

(c) That in ascertaining the differences in costs of production, under the provisions of subdivisions (a) and (b) of this section, the President, in so far as he finds it practicable, shall take into consideration (1) the differences in conditions in production, including wages, costs of material, and other items in costs of production of such or similar articles in the United States and in competing foreign countries; (2) the differences in the wholesale selling prices of domestic and foreign articles in the principal markets of the United States; (3) advantages granted to a foreign producer by a foreign government, or by a person, partnership, corporation, or association in a foreign country; and (4) any other advantages or disadvantages in competition.

\*        \*        \*        \*        \*        \*        \*

We see no difference in principle in authorizing the President, in ascertaining the differences in costs of production, to consider the differences in the wholesale selling prices of domestic and foreign articles, as provided in said section 315, above quoted, and the provision in section 336 authorizing the commission to accept as evidence of costs of production, when they can not otherwise be readily ascertained, the weighted average of invoice prices and/or the average wholesale selling price for a representative period, as set forth in said section 336.

By said language Congress did not give to the commission the discretion to accept either foreign value or invoice prices in lieu of costs of production, but only provided that they might be accepted as evidence of the costs of production. The theory of Congress was, no doubt, that in the ordinary course of trade the weighted average of invoice prices or average wholesale selling price would not be less than the cost of production, and to that extent they might be accepted as evidence thereof. The same principle is found in section 315 of the Tariff Act of 1922, authorizing the President, in ascertaining the differences in costs of production, to consider the differences in the wholesale selling prices of domestic and foreign articles in the principal markets of the United States.

We therefore conclude that the question of the constitutionality of said section 336 of the tariff act is controlled by the principles declared in the decisions of the Supreme Court and this court, heretofore cited, holding section 315 of the Tariff Act of 1922 to be constitutional, and that said section 336 of the Tariff Act of 1930 does not purport to delegate legislative power, and its provisions are within the power of Congress.

The next question for determination is whether, in issuing the proclamation here involved, the President exceeded the powers delegated to him by Congress.

If the President in the case at bar went beyond or contrary to, or did not observe the limitations and conditions of, said section 336 of the Tariff Act of 1930, the legality of his order and proclamation may be reviewed by us upon this appeal. *Foster & Co.* v. *United States, supra; United States* v. *Fox River Butter Co., supra.*

If it appears that the President has complied with the mandates of the law, the findings of fact upon which the proclamation is based are final and conclusive and may not be reviewed by us. *United States* v. *S. Leon & Co., supra.*

It will be observed that the articles described by the President in his proclamation were not *eo nomine* named in the Tariff Act of 1930 but are classified by him as coming within the provisions of paragraph 397 of said act, hereinbefore quoted. The proclamation recites the increases of duty as follows:

An increase in the rate of duty expressly fixed in paragraph 397 of Title I of said act on woven-wire fencing and woven-wire netting, all the foregoing composed of wire smaller than eight one-hundredths and not smaller than three one-hundredths of an inch in diameter, coated with zinc or other metal before weaving, from 45 per centum ad valorem to 50 per centum ad valorem;

And an increase in the rate of duty expressly fixed in paragraph 397 of Title I of said act on woven-wire fencing and woven-wire netting, all the foregoing composed of wire smaller than eight one-hundredths and not smaller than three one-hundredths of an inch in diameter, coated with zinc or other metal after weaving, from 45 per centum ad valorem to 60 per centum ad valorem.

Appellee contends that Congress has not delegated to the President the power to describe an article falling within a catchall or basket paragraph and give to it an *eo nomine* designation as he has done in the case at bar, and that therefore, in the issuance of said proclamation, he exceeded the powers delegated to him by Congress.

We can not agree with this contention. It is well established that where a general class of articles is named in a tariff law without specifying each article coming within the class, each of said articles is regarded as enumerated as clearly as if the proper names of each and all of them had been given. *Mason* v. *Robertson*, 139 U. S. 624; *Arthur* v. *Butterfield*, 125 U. S. 70. In the case of *Mason* v. *Robertson, supra*, there was presented the question of whether bichromate of soda

was an enumerated article in the Tariff Act of March 3, 1883, under a provision of said tariff law which read as follows: "* * * all chemical compounds and salts, by whatever name known, * * *." The court in its opinion said:

In the customs act of 1883, Schedule A, entitled "Chemical Products," besides defining the duties on more than a hundred kinds of such products, makes the duty on "all chemical compounds and salts, by whatever name known, and not specially enumerated or provided for in this act, twenty-five per centum ad valorem." The designation, "all chemical compounds and salts, by whatever name known," includes all chemical compounds and chemical salts, used then or thereafter in any science or art, as clearly as if the proper names of each and all of them had been given. Bichromate of soda, being undoubtedly a chemical compound and a chemical salt, is within the very words of the schedule, and can not therefore be treated as a nonenumerated article, within the similitude clause. * * *

Under this principle if the articles here involved are classifiable under said paragraph they must be regarded as enumerated therein, to use the language of the Supreme Court, "as clearly as if the proper names of each and all of them had been given."

This being the law, we think it was clearly the intention of Congress to empower the President to change the classification of an article falling within the provisions of said paragraph 397 of said tariff act and increase or decrease the rates of duty thereon to the same extent as if said article had been *eo nomine* designated in said paragraph; this conclusion is supported by our decisions in *United States* v. *Fox River Butter Co.*, *supra*, *United States* v. *Blandamer*, *supra*, and United States v. *Leon*, *supra*.

There is no distinction in principle upon this point between the case at bar and the questions presented in the cases last above cited, and those decisions are controlling here upon our determination of the question of the power of the President to describe an article included in a general class and increase or decrease the duty upon that article without affecting other articles within the class.

The case of *United States* v. *Fox River Butter Co.*, *supra*, involved the power of the President, under the Tariff Act of 1922, to describe, and increase the duty upon, a particular kind of cheese when there was no *eo nomine* designation in the act of that particular kind of cheese, but *cheese* without further description was provided for. It appears from the opinion that at the time of the enactment of said tariff act there were more than 150 varieties of cheese, covering a wide range of values. With respect to the power of the President to describe a particular variety of cheese and increase the duty thereon, this court said:

But relatively few paragraphs in the Tariff Act of 1922 provided a separate rate of duty for each imported article covered thereby.

A large majority of the dutiable paragraphs of the 1922 tariff act contained one or more provisions, each of which covered many articles at the same rate or rates of duty. Accordingly, if the President lacked authority to describe the particular article or articles on which the rate or rates of duty were to be increased or de-

creased, the increased or decreased rates, as to each of those paragraphs, would have applied to all, or to none, of the articles covered by a provision fixing a rate or rates of duty. Obviously, it was not the purpose of the Congress to require the President to change the classification, or increase or decrease the rates of duty, on *all* articles covered by a tariff provision bearing the same rate or rates of duty in order that the differences in the cost of production of *one or more of such articles* might be equalized.

\* \* \* \* \* \* \*

\* \* \* The power to describe the particular article or articles on which the rate or rates of duty were to be increased or decreased by the President is necessarily implied from the language of section 315 (a). That section conferred upon the President the power to "determine and proclaim the changes in classifications or increases or decreases in any rate of duty," provided for in the dutiable list of that tariff act, necessary to equalize the differences in costs of production of like or similar articles produced in the United States and in competing foreign countries. Obviously, if the provisions of the statute in question were intended to be given any force and effect, the power to change classifications, or to increase or decrease the rate or rates of duty, must have carried with it the power to describe the articles on which the rate or rates of duty were to be increased or decreased. Such power was not legislative in character. It was but the necessary means to an end—the means necessary to carry out the constitutional and "intelligible plan" of the Congress. *Hampton, jr., & Co.* v. *United States*, 14 Ct. Cust. Appls. 350, T. D. 42030, 276 U. S. 394.

We hold that the foregoing controls our decision in the case at bar upon the question of whether the President exceeded the powers delegated to him in said section 336.

Another contention made by appellee is that it has not been judicially determined whether woven-wire netting of the character of the merchandise here involved is classifiable under paragraph 397, paragraph 317, or paragraph 318 of said Tariff Act of 1930; that it will require litigation finally to determine this question, and that to sustain the proclamation of the President herein it will be necessary for this court to determine, to quote from appellee's brief—

in advance of the question being presented in full, that "woven-wire fencing" and "woven-wire netting" are dutiable as manufactures of metal under paragraph 397, *supra*, rather than by similitude or otherwise as woven-wire cloth, fabric, etc., as provided for in paragraph 318, *supra*.

Appellee's counsel then argues in his brief that—

If such Executive writing of legislation and determining in advance of controverted questions, which are subject to judicial determination, be upheld, the work of the courts will be seriously hampered and circumscribed, and the province of the judiciary will be invaded.

The answer to this contention is that if the President has classified merchandise of the character here involved under an incorrect paragraph, and the increase of duty fixed by his proclamation is greater than an increase of fifty per centum over the duty fixed in the paragraph under which the merchandise should have been classified, that question could have been presented in full upon the trial of this case in the court below and reviewed by us upon appeal.

If upon such trial, or review by us upon appeal, it was found that the President had exceeded his powers by classifying merchandise under the wrong paragraph, resulting in an increase of duty greater than would have been proper had the merchandise been classified under the right paragraph, then of course his proclamation would be void and the increase of duty provided for therein would not be effective.

No such question is presented in the case at bar. Appellee in its protest alternatively claimed the merchandise to be dutiable under said paragraph 397 at 45 per centum ad valorem; the lower court found the merchandise to be so dutiable and entered judgment accordingly. Appellee has not appealed from such judgment and does not here complain of the finding of the court below that the merchandise is dutiable under said paragraph 397 at 45 per centum ad valorem. For the purposes of this case, therefore, it is established that the merchandise in question is properly classifiable under said paragraph 397.

The lower court in its opinion states that, if the President is to exercise the power sought to be conferred upon him, he must act in a threefold capacity—as a judge, as a legislator, and as an administrator. We quote from the opinion as follows:

However, if the President is to exercise the power thus sought to be conferred upon him, necessarily he first must be able to identify positively the particular paragraph which Congress intended should apply to the article for which reclassification is desired. It would scarcely do to insert new words in, or add to, or rewrite the phraseology of the wrong paragraph. Therefore, the President may find himself called upon to act in a threefold capacity. As a judge he must construe and interpret the law as congressionally enacted with at least the same degree of accuracy and finality of decision as would or could the highest judicial tribunal. As the designated congressional delegate he must infallibly know the legislative changes he is supposed to make. And as President he stands committed by his oath to see that all Federal laws, including that which he, himself, has written, are duly executed. In a word, he would personify at one and the same time all three branches of the Government—the judicial, legislative, and executive.

We have hereinbefore held that no legislative power is delegated by said section 336. We are unable to understand upon what theory the lower court holds that in carrying out the provisions of said section 336 the President acts in a judicial capacity. Under our tariff laws it is the duty of the collector to classify all merchandise for the assessment of duty, but we would scarcely suppose that the lower court would hold that in so doing the collector acts in a judicial capacity. His action is subject to judicial review, but such review is of an administrative act, not a judicial one. Likewise, the acts of the President in performing the duties imposed upon him by said section 336 are administrative, not judicial; and, as hereinbefore stated, judicial

review of such acts may be had for the purpose of determining whether he has exceeded the powers delegated to him.

We find that in issuing the proclamation here in question the President did not exceed the authority conferred upon him by the provisions of said section 336 of the Tariff Act of 1930, and that the merchandise herein involved is properly dutiable at the rates named in said proclamation.

For the reasons stated herein, the judgment of the United States Customs Court is *reversed*.